No. 113,483

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of S.R.C.-Q.,
DOB 2012, Female.

SYLLABUS BY THE COURT

1.

Statutory interpretation of the Interstate Compact on Placement of Children is a question of law over which our review is unlimited.

2.

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. A court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, a court does not speculate as to the legislative intent behind that clear language and will not read into the statute something not readily found in it.

3.

The Interstate Compact on Placement of Children is a uniform law that has been enacted in 52 jurisdictions, including Kansas, and establishes uniform legal and administrative procedures governing the interstate placement of children by nonparents.

4.

The policy of the State of Kansas, in adopting the Interstate Compact on Placement of Children, is to cooperate fully with other states in providing that no children shall be sent or brought into any other party state for placement in foster care or as a

preliminary to a possible adoption unless the sending agency shall comply with each and every requirement set forth in the interstate compact. K.S.A. 38-1201.

5.

Under Article III, subsection (a) of the Interstate Compact on Placement of Children, K.S.A. 38-1202, no sending agency shall send, bring, or cause to be sent or brought into any other party state any child for placement in foster care or as a preliminary to a possible adoption unless the sending agency shall comply with each and every requirement set forth in this article and with the applicable laws of the receiving state governing the placement of children therein.

6.

The Kansas version of the Interstate Compact on Placement of Children applies to out-of-state placements of children with foster care or as a preliminary to a possible adoption. The statute does not apply to out-of-state placements with parents. See K.S.A. 38-1202.

Appeal from Mitchell District Court; DEBRA J.G. WRIGHT, judge. Opinion filed February 19, 2016. Affirmed.

*Katie J. Schroeder*, of Schroeder Law Office, LLC, of Beloit, appellant guardian ad litem.

*James M. Johnson*, of Frasier, Johnson & Martin, LLC, of Beloit, for appellant natural father.

*Jerry L. Harrison,* of Harrison Law Office, LLC, of Beloit, for appellee natural mother.

Before MCANANY, P.J., POWELL, J., and DAVID J. KING, District Judge, assigned.

POWELL, J.:  This appeal stems from two orders of the Mitchell County District Court involving S.R.C.-Q., a child whose mother resides in Wisconsin and whose father

resides in Kansas. After nearly 9 months of child-in-need-of-care (CINC) proceedings that failed to produce the needed report from the State of Wisconsin advising as to the suitability of placement of the child with Mother in the home of the maternal grandmother in Wisconsin, the district magistrate judge issued two orders: First, the court determined that the Interstate Compact on Placement of Children (ICPC) does not apply when a child is placed out-of-state with a parent; and second, the court terminated the Kansas Department for Children and Families' (DCF) custody of S.R.C.-Q. and placed the child in Mother's custody in Wisconsin, with visitation with Father in Kansas every 2 weeks for 2-week periods. Father and the guardian ad litem argue on appeal the district court incorrectly determined the ICPC did not apply and that it was an abuse of discretion to give Mother custody of S.R.C.-Q. Additionally, the guardian ad litem contends the visitation schedule order was an abuse of discretion. Because we agree with the district court that the ICPC does not apply to the placement of a child with a parent and because we find that the district court did not abuse its discretion in awarding custody to Mother and terminating the CINC case, we affirm.

FACTUAL AND PROCEDURAL HISTORY

In March 2012, Mother gave birth to S.R.C.-Q. in Wisconsin, where Mother and the child lived with the maternal grandmother. Roughly 2 years later, in March 2014, a paternity test—presumably done as a result of a pending paternity case—confirmed Father's parentage of S.R.C.-Q. Between March and May 2014, Mother and S.R.C.-Q. visited Kansas multiple times to spend time with Father. In May 2014, Mother relocated to Kansas with S.R.C.-Q. to reside with Father.

On May 21, 2014, Father filed a petition for protection from abuse, alleging that Mother hit him in the head with a knife, threatened to harm herself, and was otherwise dangerous to herself and to the child. The district court entered a temporary order of protection and placed S.R.C.-Q. in the temporary/emergency custody of Father. The next

3

day, the State of Kansas filed criminal charges against Mother, resulting in her arrest and incarceration. On June 11, 2014, the court entered a final order of protection from abuse protecting Father from Mother and ordered temporary custody of S.R.C.-Q. to continue with Father pending a final plan approved by the court in a pending paternity case.

However, on July 10, 2014, a CINC case was initiated in the Mitchell County District Court, and temporary emergency orders were entered on July 14, 2014, placing S.R.C.-Q. in State custody. Mother subsequently entered a plea in her criminal case and was sentenced to unsupervised probation. Mother then moved back to Wisconsin to reside with S.R.C-Q.'s maternal grandmother.

On August 21, 2014, Mother challenged the district court's jurisdiction over S.R.C.-Q. pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), K.S.A. 23-37,101 *et seq*. In accordance with the UCCJEA, the district court sent a letter and relevant information to the Circuit Court in Winnebago, Wisconsin. On September 22, 2014, the Wisconsin court and the Kansas court held a hearing, and both courts agreed that although Wisconsin was S.R.C.-Q.'s home state, Wisconsin was an inconvenient forum for the proceedings. Thus, Wisconsin released jurisdiction to Kansas to determine all matters. The district court then ordered an expedited placement decision from Wisconsin under the provisions of the ICPC.

Upon Mother's stipulation to Kansas' jurisdiction and Father's entry of a no-contest statement agreeing to Kansas' jurisdiction, the district court adjudicated S.R.C.-Q. a CINC on October 8, 2014; State custody was continued; and the district court approved placement of S.R.C.-Q. with the paternal grandparents in Kansas. A disposition hearing was held November 21, 2014, and the prior orders were continued regarding custody and placement. Mother and Father each entered into service plans to address mental health, domestic violence, housing, employment, and parenting skills. Mother complied with the

4

requirements of her service plan except for missing two weekly parenting classes. Father did not complete the batterer's intervention program as ordered.

In January 2015, in light of Wisconsin's failure to respond to the district court's request for a placement decision pursuant to the ICPC, Mother asked the district court to determine whether the ICPC applied to the placement of S.R.C.-Q. in Wisconsin. In a decision filed on March 6, 2015, the district court determined the ICPC did not apply when a court sends a child to reside with a parent in another state. On March 13, 2015, the district court received Wisconsin's assessment of Mother's home pursuant to the requirements of the ICPC, and Wisconsin denied placement of S.R.C.-Q. with Mother, citing concerns about Mother's cohabitating boyfriend.

On March 26, 2015, the district court ordered the following:

"1. DCF custody is released. The child is placed in the mother's custody.
"2. Father shall have visitation with the child every two (2) weeks for a two (2) week period.
"3. The parents shall meet halfway between Neenah, Wisconsin and Beloit, Kansas for exchanges of the child.
"4. Both parents shall continue ongoing treatment with their current treatment providers.
"5. This case is dismissed."

Father and S.R.C.-Q.'s guardian ad litem timely appeal.

DOES THE ICPC APPLY IN KANSAS WHEN
A CHILD IS PLACED WITH AN OUT-OF-STATE PARENT?

The guardian ad litem and Father (collectively, the appellants) ask us to determine whether the ICPC applies when a court places a child with an out-of-state parent. The essence of their argument is that under the ICPC an adverse home study of Mother's

5

home in Wisconsin pursuant to the ICPC by the State of Wisconsin barred the district court from awarding custody of the child to Mother.

A.    *Standard of Review*

Application of the ICPC in this context has not yet been addressed by a Kansas appellate court, making it an issue of first impression. As resolving the issue involves the statutory interpretation of the ICPC, it is a question of law over which our review is unlimited. *Cady v. Schroll*, 298 Kan. 731, 734, 317 P.3d 90 (2014).

We use the rules of statutory construction to aid us in our task.

"The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. [We] must first attempt to ascertain legislative intent [through the statutory language enacted,] giving common words their ordinary meanings. When a statute is plain and unambiguous, [we do] not speculate as to the legislative intent behind [that clear language] and will not read into the statute something not readily found in it." 298 Kan. at 738.

B.    *A review of the relevant portions of the ICPC.*

The ICPC—a uniform law that has been enacted in 52 jurisdictions, including Kansas—establishes uniform legal and administrative procedures governing the interstate placement of children by nonparents. The Kansas version of the ICPC is found at K.S.A. 38-1201 through K.S.A. 38-1206. Its introductory provisions state:

"It is hereby found and declared: (1) That finding suitable homes for children who have lost or never had them requires the full attention and resources of the state of Kansas; (2) that the needs of children and of adults cannot be met by restricting child placement services and supervision to the state of Kansas; (3) that would-be parents and

6

children have need for love and security and fulfillment that can be met only when children in need of placement are matched with adults who can care for them; (4) a variety of circumstances makes interstate placements of children essential and offers compelling reasons for an interstate compact under which the jurisdictional, administrative and human rights and obligations involved can be protected.

"It shall therefore be the policy of this state, in adopting the interstate compact on the placement of children, to cooperate fully with other states in providing that no children shall be sent or brought into any other party state for placement in foster care or as a preliminary to a possible adoption unless the sending agency shall comply with each and every requirement set forth in this interstate compact." K.S.A. 38-1201.

Article II(d) of the ICPC, codified at K.S.A. 38-1202, defines "placement" as

"the arrangement for the care of a child in a *family free or boarding home or in a child-caring agency or institution* but does not include any institution caring for the mentally ill, mentally defective or epileptic or any institution primarily educational in character, and any hospital or other medical facility." (Emphasis added.)

Article III of the ICPC, also codified at K.S.A. 38-1202, sets forth the conditions for out-of-state placement of a child:

"(a) No sending agency shall send, bring, or cause to be sent or brought into any other party state any child for placement in *foster care or as a preliminary to a possible adoption* unless the sending agency shall comply with each and every requirement set forth in this article and with the applicable laws of the receiving state governing the placement of children therein.

"(b) Prior to sending, bringing or causing any child to be sent or brought into a receiving state for placement in *foster care or as a preliminary to a possible adoption*, the sending agency shall furnish the appropriate public authorities in the receiving state written notice of the intention to send, bring, or place the child in the receiving state." (Emphasis added.)

7

Finally, Article VII of the ICPC, also codified at K.S.A. 38-1202, provides:

> "The executive head of each jurisdiction party to this compact shall designate an officer who shall be general coordinator of activities under this compact in his jurisdiction and who, acting jointly with like officers of other party jurisdictions, shall have power to promulgate rules and regulations to carry out more effectively the terms and provisions of this compact."

The Association of Administrators of the Interstate Compact on the Placement of Children (AAICPC), presumably the group of "officers" described in Article VII, has promulgated various regulations designed to accompany the ICPC. These regulations are found at AAICPC's official website. See http://www.aphsa.org/content/AAICPC/en/home.html. ICPC Regulation 3, as amended effective October 1, 2011, is relevant to this case:

> "2. <u>Placement categories requiring compliance with ICPC</u>: Placement of a child requires compliance with the [ICPC] if such placement is made under one of the following four types of placement categories:
>
> "(a) . . . .
>
> . . . .
>
> (3) <u>Placements with *parents* and relatives</u> when a parent or relative is not making the placement as defined in Article VIII(a) 'Limitations.'" (Emphasis added.) http://www.aphsa.org/content/dam/AAICPC/PDF%20DOC/Home%20page/ICPC-Regulation3-Sept2011.pdf.

In short, while the terms of the ICPC as enacted in Kansas explicitly apply to out-of-state placements of children with foster parents or as a precursor to adoption, it does *not* explicitly apply to out-of-state placements of children with a parent. Regulation 3, however, explicitly extends application of the ICPC to out-of-state placements of children with parents when a parent is not making the placement.

B.      *The ICPC governs only the placement of children in substitute arrangements for parental care.*

The main thrust of the appellants' argument is twofold:  First, because the ICPC is to be construed liberally to effectuate its purposes and its primary purpose is to protect children, the ICPC should be construed broadly to include placements with a parent; and second, Regulation 3 specifically mandates that the ICPC applies in such instances. As we have previously stated, unfortunately, no appellate court in Kansas has answered the question of whether the ICPC applies to out-of-state placements of children with natural parents. However, courts in other states have, yet their views are divided.

Some states have determined the ICPC applies to out-of-state placements of children with a natural parent, but with different rationales. See *Green v. Division of Family Services*, 864 A.2d 921, 927 (Del. 2004) (ICPC should be read to encompass placement of dependent child with noncustodial parent); *Adoption of Warren*, 44 Mass. App. 620, 624, 693 N.E.2d 1021 (1998) (placement of child with out-of-state father constitutes placement under ICPC).

For example, the District Court of Appeal of Florida recently reaffirmed the ICPC's application to out-of-state placements with a natural parent in *Department of Children and Families v. C.T.*, 144 So. 3d 684 (Fla. Dist. App. 2014). The Florida court relied upon reasoning that made analogous foster care placements to placements by a court with a parent:

> "'In such circumstances, the parent's situation is not custody or possession as a matter of parental right, but rather it is the same as the position of a foster parent. In both instances they are caregivers only because of the authority conferred to them by the state acting through the court. When a child is with a caregiver under these circumstances, the child is in foster care.'" 144 So. 3d at 686 (quoting *H.P. v. Department of Children and Families*, 838 So. 2d 583, 586 (Fla. Dist. App. 2003).

9

The New York Supreme Court, Appellate Division, Second Department, took a different approach to deciding this question in *Matter of Roosevelt Mc., Jr.*, 118 A.D.3d 1006, 989 N.Y.S.2d 89 (2014). There, the court reasoned that the ICPC applied to out-of-state placements of children with a natural parent when, under the facts of a particular case, the best interests of the children warranted application of the ICPC. 118 A.D.3d at 1008.

The Arizona Court of Appeals recently determined that the ICPC applied to such placements in *Arizona Dept. of Economic Sec. v. Stanford*, 234 Ariz. 477, 323 P.3d 760 (2014), but the court opted to rely upon Regulation 3 as the basis of its holding:

> "Under the ICPC regulations, promulgated by the Association of Administrators of the ICPC (AAICPC) pursuant to article VII of [Ariz. Rev. Stat.] § 8-548, the above terms of the ICPC apply to placement 'with parents and relatives' and non-agency guardians, except when a parent or relative also is requesting the placement under certain circumstances. See ICPC Reg. 3(2)(a)(3) and 10(3)(a), available at www.aphsa.org/content/AAICPC/en/ICPCRegulations.html; see also [Ariz. Rev. Stat.] § 8-548 art. VIII(a)." 234 Ariz. at 481.

On the other hand, some states have rejected application of the ICPC to out-of-state placements of children with a natural parent. See, *e.g.*, *Arkansas Dep't of Human Servs. v. Huff*, 347 Ark. 553, 563, 65 S.W.3d 880 (2002) (plain language of ICPC shows intended only to govern placing children in substitute arrangements for parental care); *In re Patrick S.*, 218 Cal. App. 4th 1254, 1264, 160 Cal. Rptr. 3d 832 (2013) ("Compliance with the ICPC is not required for placement with an out-of-state parent."); *In re Emoni W.*, 305 Conn. 723, 734, 48 A.3d 1 (2012) (plain language of ICPC does not encompass placement with noncustodial parent); *In re Alexis O.*, 157 N.H. 781, 787, 959 A.2d 176 (2008) (Compact not intended to apply when child is returned to natural parent residing in another state); *Dependency of D.F.-M.*, 157 Wash. App. 179, 191, 236 P.3d 961 (2010)

(ICPC governs only placement of children in substitute arrangements for parental care); see also *McComb v. Wambaugh*, 934 F.2d 474, 482 (3d Cir. 1991) ("Compact was intended only to govern placing children in substitute arrangements for parental care."). Of particular interest to us is that most, if not all, of the courts in these cases reasoned that the plain language of the ICPC mandated such a result and that Regulation 3 was inapplicable.

The Supreme Court of Connecticut provides a useful analysis of this issue. In *In re Emoni W.*, 305 Conn. at 734, the court analyzed the plain language of the ICPC and concluded that "the ordinary meaning of the phrase 'for placement in foster care or as a preliminary to a possible adoption' as used in [Conn. Gen. Stat.] § 17a-175, article III(a), does not encompass placement with a noncustodial parent." The court also, while setting aside the question of whether the regulations released by the AAICPC were even valid, specifically rejected the applicable portion of Regulation 3 because, under Connecticut law, it "impermissibly expand[ed] the scope of article III of [Conn. Gen. Stat.] § 17a-175." 305 Conn. at 740.

The Washington Court of Appeals took a similar approach. In response to the argument that a liberal construction of the ICPC required application of the Compact to parental placements, the court held that such reasoning conflicted with the "plain terms" of the ICPC. *Dependency of D.F.-M.*, 157 Wash. App. at 190. It also noted that the term "foster care" in the relevant portion of article III of the ICPC is not defined but that "[t]he plain, ordinary meaning of the term is the placement of a child in a substitute home, one other than that of the child's parents." 157 Wash. App. at 188-89. As to Regulation 3, the court stated: "The AAICPC regulations have not been adopted in Washington and therefore have no binding effect. In any event, regulation 3 cannot control because it impermissibly expands the scope of the ICPC beyond that established in article III. Under article III, the compact applies to foster care or placements preliminary to possible adoption, neither of which is a parental placement." 157 Wash. App. at 192.

We find the reasoning of both the Connecticut Supreme Court and the Washington Court of Appeals to be persuasive because they parallel our Supreme Court's mandate to follow the statutory language as written and to invalidate regulations that alter, modify, or enlarge the legislative act being administered. See *NCAA v. Kansas Dept. of Revenue*, 245 Kan. 553, 557, 781 P.2d 726 (1989); see also *Ft. Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs.*, 290 Kan. 446, 455, 228 P.3d 403 (2010) (agencies only have authority conferred by statutes either expressly or by clear implication from express powers).

The Kansas version of the ICPC as enacted by the legislature expressly states that it applies to out-of-state placements of children with foster care or as a preliminary to a possible adoption. K.S.A. 38-1202 (Art. 3, ICPC); see *In re Adoption of A.M.M.*, 24 Kan. App. 2d 605, 609, 949 P.2d 1155 (1997) ("It is the placement of a child as preliminary to a possible adoption which triggers the ICPC."). The statute does not state that it applies to such placements with parents. Also, even if we were to assume that Regulation 3 promulgated by the AAICPC was validly enacted—which we doubt given that we have been unable to find any regulations issued by the Kansas coordinator of the ICPC—the language in Regulation 3 impermissibly enlarges the application of the ICPC to out-of-state placements with parents beyond the plain language of the statute.

Finally, we observe that sound public policy reasons as expressed by the legislature in our state's Revised Kansas Code for Care of Children buttress our findings today. See K.S.A. 2015 Supp. 38-2201(b)(1)-(2). Our sister court, the Washington Court of Appeals, perhaps expressed the essence of this policy best when it stated that it is the court's ultimate obligation and duty to act in the best interests of children:

> "However, courts, not administrative agencies or individual social workers, are the
> ultimate evaluators of a parent's ability to care for his child, and the ultimate

12

decisionmakers as to whether placement with a fit parent is in the child's best interests. Yet under regulation 3, when a fit parent is available but an ICPC home study is negative, all discretion is transferred to an administrative agency in the sister state. If the court determines the parent is fit, the ICPC may become an obstacle to the court's ability to act in the best interests of the child." *Dependency of D.F.-M.*, 157 Wash. App. at 192-93.

Accordingly, we hold that the ICPC applies only to out-of-state placements of children with foster care or as a preliminary to a possible adoption, not to out-of-state placements with a parent.

## DID THE DISTRICT COURT ABUSE ITS DISCRETION WHEN IT PLACED S.R.C.-Q. WITH MOTHER IN WISCONSIN?

Alternatively, the appellants argue the district court abused its discretion when it released S.R.C.-Q. from DCF custody and placed her with Mother in Wisconsin. In a CINC case, the district court's decision with regard to placement of a child is reviewable for abuse of discretion. See *In re M.R.*, 36 Kan. App. 2d 837, 839, 146 P.3d 229 (2006).

"A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. [Citation omitted.] The party asserting an abuse of discretion bears the burden of showing such an abuse of discretion. [Citation omitted.]" *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013).

First, the appellants contend there was an abuse of discretion because the district court awarded custody to Mother in spite of Wisconsin's recommendation against doing so. In support of their position, appellants rely on the Wisconsin home study report which denied placement with Mother due to concerns about Mother's boyfriend, S.F., who lives with Mother. S.F. has no criminal record, but juvenile records apparently indicate that when he was 25 he might have had sex with a 16-year-old person. These juvenile records

are not included in the record on appeal. There was never an investigation into the validity of the allegation, and the record on appeal contains no other information regarding these concerns.

Although the authorities in Wisconsin apparently decided the allegation against S.F. was serious enough to deny placement of S.R.C.-Q. in Mother's home, we find the district court did not abuse its discretion in choosing not to follow Wisconsin's recommendation because the report contained only an allegation of unknown origin with no accompanying investigation. Of greater significance to us is Mother's correct assertion that she successfully completed the tasks of her case plan. In light of this record, we cannot say that the district court abused its discretion in placing S.R.C.-Q. with Mother.

Second, the guardian ad litem argues the district court abused its discretion in ordering a visitation schedule that amounted to S.R.C.-Q. spending half her time in Wisconsin and half her time in Kansas, in 2-week intervals. However, we consider the point moot given that the district court terminated the CINC proceedings and, according to counsel for all sides, the matter is now under review by the district court in the paternity action. Therefore, we decline to address the merits of this issue.

Affirmed.