No. 119,264

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of P.J., B.D., and P.D.,
Minor Children.

SYLLABUS BY THE COURT

1.

A trial court's decision in a dispositional hearing must be reviewed under an abuse of discretion standard of review.

2.

A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) is based on an error of law; or (3) is based on an error of fact. The party asserting an abuse of discretion bears the burden of showing it. This court does not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact.

3.

When a trial court makes factual findings in a dispositional hearing under K.S.A. 2017 Supp. 38-2253 and related statutes, those factual findings are to be made using a preponderance of evidence standard. Moreover, those factual findings are to be reviewed on appeal to determine whether substantial competent evidence supports those findings. Substantial evidence is evidence which possesses both relevance and substance and which provides a substantial basis of fact from which the issues can be reasonably resolved.

Appeal from Sumner District Court; WILLIAM R. MOTT, judge. Opinion filed October 19, 2018. Affirmed.

1

*Elaine M. Esparza*, of Harper, for appellant natural mother.

*Jennifer Harper*, deputy county attorney, for appellee State of Kansas.

*Martin J. Peck*, of Wellington, for appellee natural father.

*Shawn R. DeJarnett*, of DeJarnett Law Office, L.L.C., of Wellington, guardian ad litem.

Before BUSER, P.J., GREEN and ATCHESON, JJ.

GREEN, J.: A.J. (Mother) appeals from a judgment of the trial court placing her children in the custody of their respective fathers after the children were adjudicated as children in need of care (CINC). Mother also argues that the trial court erred by not granting her a reintegration plan. For the reasons stated later, we reject these arguments. Accordingly, we affirm.

Mother is the natural mother of B.D., P.D., and P.J. B.D. was born in 2011, P.D. was born in 2014, and P.J. was born in 2016. T.D. is the father of P.J. and P.D. G.D. is the father of B.D.

On September 1, 2017, Mother took her oldest child, B.D., to school and left her other two children with her then boyfriend, D.H., before leaving town to retrieve a vehicle.

While at school, B.D. fell ill and developed a fever. B.D.'s school tried, without success, to have Mother return to the school after the child's symptoms worsened. Mother allegedly could not return to the school because of car problems. As a result, the school called Gordon Fell, Belle Plaine Chief of Police. Chief Fell gave the school authority to medicate B.D. Chief Fell also retrieved P.J. and P.D. from Mother's home and brought

them to B.D.'s school. On arrival, Chief Fell noticed that P.J. had a severe diaper rash and smelled strongly of urine and P.D. had a powdery substance in her hair.

Mother eventually arrived at the school. She appeared to have been in a physical altercation, which Chief Fell would later describe as a "severe aggravated battery case." When asked about the bruising and markings on her body, Mother maintained that she could not remember. She also maintained that a refrigerator fell on her as she tried to move it while intoxicated. Later, Mother claimed that she fell down a flight of stairs. She never gave an explanation for the ligature mark around her neck. Because of the severity of her injuries, a person from the Kansas Department for Children and Families (DCF) took Mother to a hospital for treatment. According to Chief Fell, Mother's children were present in the home when her injuries occurred.

Mother's boyfriend, D.H., was waiting in a car outside the school during Mother's interaction with Chief Fell. D.H. was later arrested and charged with possession of marijuana, possession of drug paraphernalia, domestic battery, and disorderly conduct.

After Mother was transported to the hospital, Chief Fell contacted Jeanne Chew, a juvenile intake worker, and DCF worker, Letitia Quarles. Chew and Quarles contacted the children's fathers and eventually placed the children with their respective fathers.

After contacting T.D., the father of P.D. and P.J., Chief Fell accompanied T.D. to Mother's home to retrieve clothing and medicine for the children. The men found that the house was in "deplorable" condition; it was without running water or other utilities. The toilet was clogged and full of feces. The beds were lying on the floor without sheets. Chief Fell described one room as a "party room," which contained alcohol containers and a marijuana pipe. Chief Fell took pictures of the home and described the conditions as uninhabitable. Eventually, Chief Fell placed a placard of inhabitability on Mother's home.

3

Mother contended that the house was under renovation and that the dangerous areas were blocked off from the children for their safety. Mother also asserted that she and her children frequently stayed at her mother's house in Wichita, Kansas.

The State requested a temporary custody hearing on September 5, 2017. The next day, the trial court held the custody hearing. All parties, including Mother, agreed to the temporary placement of the children with their fathers. The trial court found that it was in the children's best interests that they remain in the temporary, residential custody of their respective fathers.

An adjudication hearing was scheduled on October 18, 2017. Mother requested an evidentiary hearing which was set for December 1, 2017. After the evidentiary hearing, the trial court adjudicated the children as CINC.

An evidentiary disposition hearing was held on March 6, 2018. At the disposition hearing, the State proffered the court services report which recommended that the children remain with their fathers. After no objection by the parties, the trial court admitted the report. The guardian ad litem also requested that the trial court take judicial notice of the previous CINC hearing, which the court did.

Mother testified that she had completed a drug and alcohol evaluation with no recommendations for treatment, that she was in therapy with a counselor, and that she tried to set up family preservation services. Mother, however, failed to provide evidence of completion of her tasks and did not remember the service providers' names. Mother testified that she had a valid driver's license, which the State refuted by submitting her license status. This showed that her license had been suspended. Mother testified that someone had told her that family preservation services were unavailable because she did not have the children in her home. Mother asserted that her home was no longer under renovation and that her home had all working utilities. She also testified that her home was inspected by a city official who found it fit to live in.

Candace Giefer, the court services officer, testified on behalf of the State. Giefer explained that Mother never met with her to report any of her alleged accomplishments. Giefer testified that Mother had scheduled an appointment to speak with her, but she had missed the appointment without explanation, and she did not reschedule another appointment. Giefer also testified that she met with T.D. to discuss the case and care of the children. Giefer felt that the children were doing fine with their fathers and recommended they remain in their fathers' custody. Giefer made an alternative recommendation which included reintegration tasks. Giefer testified that if the children were not placed with their fathers, the children needed to be placed in DCF custody so Mother could avail herself to the extensive services she would need to complete her reintegration tasks.

The trial court held that it was in the children's best interests to remain placed with their fathers. The trial court did not grant Mother a reintegration plan but ordered a review hearing to consider child custody orders.

Mother timely appeals the trial court's decision under K.S.A. 2017 Supp. 38-2273.

*Did the Trial Court Err by Placing the Children in the Custody of Their Fathers?*

The parties dispute whether this court should review Mother's appeal under an abuse of discretion standard, a substantial evidence standard, or a clear and convincing evidence standard.

Mother asserts that we should apply a clear and convincing evidence standard. We note, however, that there is no statutorily prescribed standard of review set out under K.S.A. 2017 Supp. 38-2253, K.S.A. 2017 Supp. 38-2256, or K.S.A. 2017 Supp. 38-2257. We further note that Kansas lacks court precedent on what standard should be used at the dispositional stage of the proceeding. We also note that K.S.A. 2017 Supp. 38-2250

5

requires a clear and convincing evidence standard when a child is adjudicated CINC. Moreover, that same standard is required when a parent's rights are terminated under K.S.A. 2017 Supp. 38-2269. Nevertheless, the clear and convincing evidence standard is left out of the statutes concerning a disposition hearing. Although our Supreme Court clarified that a trial court's decision to adjudicate a child CINC must be reviewed under a clear and convincing evidence standard. In *In re B.D.-Y.*, 286 Kan. 686, 187 P.3d 594 (2008), we cannot assume that our Supreme Court intended to use a clear and convincing evidence standard at every stage of a CINC case.

We note that the disposition hearing stage requires a trial court to determine whether to keep the children in the home, place them in foster care, or make a different placement. Moreover, the trial court is required to consider the children's physical, mental, and emotional well-being along with their need for assistance. These are components of the best interests of the child.

Indeed, relevant statutory language revolves around "the best interests of the child" and other similar factors. See K.S.A. 2017 Supp. 38-2252; K.S.A. 2017 Supp. 38-2253; K.S.A. 2017 Supp. 38-2255. Generally, an appellate court reviews a trial court's decision regarding a child's best interest for an abuse of discretion. See, e.g., *In re L.A.M.*, 268 Kan. 441, 996 P.2d 834 (2000); *In re R.S.*, 50 Kan. App. 2d 1105, 1116, 336 P.3d 903 (2014). Additionally, when reviewing a trial court's best-interests decision, abuse of discretion is the logical standard of review. See *In re J.D.W.*, 711 A.2d 826, 834 (D.C. 1998). Often the best interests of the child at the dispositional phase will turn on immeasurable nuances and "[a] best-interests determination is 'in all cases a highly discretionary call.'" *In re R.S.*, 50 Kan. App. 2d at 1114 (citing *In re J.D.W.*, 711 A.2d at 834). Thus, we determine that a trial court's decision in a dispositional hearing must be reviewed under an abuse of discretion standard of review.

A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) is based on an error of law; or (3) is

based on an error of fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015). The party asserting an abuse of discretion bears the burden of showing it. *In re K.E.*, 294 Kan. 17, 23, 272 P.3d 28 (2012). This court does not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re B.D.-Y.*, 286 Kan. at 705.

Before entering an order of disposition, K.S.A. 2017 Supp. 38-2255(a) requires that the trial court consider:

"(1) The child's physical, mental and emotional condition;
"(2) the child's need for assistance;
"(3) the manner in which the parent participated in the abuse, neglect or abandonment of the child;
"(4) any relevant information from the intake and assessment process; and
"(5) the evidence received at the dispositional hearing."

Under K.S.A. 2017 Supp. 38-2255(b),

"[t]he [trial] court may place the child in the custody of either of the child's parents subject to terms and conditions which the court prescribes to assure the proper care and protection of the child, including but not limited to:
"(1) Supervision of the child and the parent by a court services officer;
"(2) participation by the child and the parent in available programs operated by an appropriate individual or agency; and
"(3) any special treatment or care which the child needs for the child's physical, mental or emotional health and safety."

When a trial court makes factual findings in a dispositional hearing under K.S.A. 2017 Supp. 38-2253 and related statutes, we conclude that those factual findings are to be made using a preponderance of evidence standard. Moreover, we further conclude that those factual findings are to be reviewed on appeal to determine whether substantial competent evidence supports those findings. Substantial evidence is evidence which

7

possesses both relevance and substance and which provides a substantial basis of fact from which the issues can be reasonably resolved. *Wiles*, 302 Kan. at 73.

At the disposition hearing, the trial court heard testimony from Mother and the court services officer, Giefer. The trial court noted the court file and the evidence presented at the adjudication hearing. Pending the disposition hearing, after adjudication, the children had already been placed with their respective fathers for approximately six months and were reportedly doing fine in their care.

Giefer recommended that the children continue in their current placement with their fathers. Giefer also made an alternative recommendation: that the children be placed in DCF custody to allow Mother the services she would need to complete a reintegration plan. Giefer admitted that she had only met with one of the fathers, T.D., before the disposition hearing and had not personally visited the fathers' homes. Still, Giefer testified that she had received no information which would cause her concern over the fathers' ability to care for the children. Additionally, the guardian ad litem argued that there was no evidence presented that would justify a finding under K.S.A. 2017 Supp. 38-2255(c) that the children were likely to sustain harm if they were not immediately removed from their fathers' home. The guardian ad litem also reminded the court that Mother originally agreed to place the children with their fathers. Moreover, at the disposition hearing, Mother again testified that she had no concerns with B.D.'s father, G.D.

With regards to Mother, Giefer testified that Mother's living conditions, that the neglect of the children, and that her violent relationship with D.H. caused her great concern. Giefer also testified that Mother had failed to meet with her or submit any evidence of completing a psychological evaluation, drug and alcohol treatment, or a written budget as required by the court.

8

Mother testified about her newly developed concerns with T.D.'s parenting abilities. Mother testified that she had to bring P.J. to the hospital for a high fever after a stay with T.D. Mother also testified that she had "drastically" changed the conditions of her home to make it habitable. Mother presented a letter written by a city official which allegedly showed the home had been inspected after Mother completed several renovations. Mother also testified that she was willing to work with Giefer but failed to meet with Giefer before the disposition hearing. Mother also testified that she no longer had contact with D.H.

After considering all the evidence, the trial court concluded that it was in the children's best interests to remain with their fathers. The trial court then ordered a review hearing to consider child custody orders. The trial court also granted Mother continuing visitation with the children and entered a no contact order with D.H.

It was within the trial court's discretion to order placement of the children with their respective parents. We conclude that substantial competent evidence supports the placement of the children with their fathers. Thus, the trial court did not abuse its discretion. As a result, we conclude that Mother's first argument fails.

*Was the Trial Court Required to Grant Mother a Reintegration Plan?*

Mother argues that the trial court was required to grant her a reintegration plan to regain residential custody of her children. Mother couches her assertion on a public policy argument that pursuing her claim for residential custody of her children in domestic court will put her at a significant disadvantage. Mother points to the need to retain counsel as one disadvantage and seemingly implies that the trial court's decision against her also hinders her future custody claims.

Mother's challenge of the trial court's denial of a reintegration plan raises a legal issue. This court reviews the trial court's legal conclusions, including the interpretation of

relevant statutes, de novo with no deference to the trial court. See *In re A.F.*, 38 Kan. App. 2d 773, 776-77, 172 P.3d 66 (2007), *disapproved on other grounds In re B.D.-Y.*, 286 Kan. at 699-703; *In re K.M.*, No. 111,109, 2014 WL 3907119 (Kan. App. 2014) (unpublished opinion).

This court has held that developing a reintegration plan before termination is not compulsory. *In re J.G.*, 12 Kan. App. 2d 44, 51, 734 P.2d 1195, *rev. denied* 241 Kan. 838 (1987), *overruled on other grounds In re B.D.-Y.*, 286 Kan. at 702-03; see also *In re R.M.C.H.*, No. 104,249, 2011 WL 1344774 (Kan. App. 2011) (unpublished opinion). In *In re R.M.C.H.* and other similar cases, this court has held that because the trial court made a finding that reintegration was not a viable option, the court was not required to develop a reintegration plan before terminating parental rights. 2011 WL 1344774, at *5. Here, the trial court did not make the specific finding that reintegration was not viable but this is not a case where Mother's rights were terminated. Instead, permanency with a parent was attained; therefore, reintegration with Mother was not an issue the trial court was required to decide at the disposition hearing.

K.S.A. 2017 Supp. 38-2201(b) states that the CINC code is to "be liberally construed to carry out the policies of the state," which includes "plac[ing] children in a permanent family setting, in absence of compelling reasons to the contrary." Under K.S.A. 2017 Supp. 38-2255(e), if custody has been removed from a parent and awarded "*to a person other than a parent*, a permanency plan shall be provided or prepared pursuant to K.S.A. 38-2264, and amendments thereto." (Emphasis added.) Then, K.S.A. 2017 Supp. 38-2264(j) contemplates the placement of a child with either parent:

> "If permanency with one parent has been achieved without the termination of the other parent's rights, the court may, prior to dismissing the case, enter child custody orders, including residency and parenting time that the court determines to be in the best interests of the child. The court shall complete a parenting plan pursuant to K.S.A. 2017 Supp. 23-3213, and amendments thereto."

10

Thus, once a child has attained permanency with one parent without terminating the other parent's parental rights, the trial court no longer needs to make a finding of viability for reintegration. Instead, that matter is best decided in domestic court. Then, if the trial court wishes to consolidate any pending civil custody case with an open CINC case, it has the authority to do so under K.S.A. 2017 Supp. 38-2264(j)(3).

Here, the children were placed with their fathers thus attaining permanency with a parent. After placing the children with their fathers, the trial court ordered a review hearing under K.S.A. 2017 Supp. 38-2264(j), to consider child custody orders. Once the children attained permanency with their fathers, the trial court was not required to grant Mother a reintegration plan but rather to complete a parenting plan under K.S.A. 2017 Supp. 23-3213. K.S.A. 2017 Supp. 38-2264(j). The trial court still has the opportunity to complete a final parenting plan at the review hearing that it already ordered. Thus, the trial court properly refused to grant Mother a reintegration plan after placing the children with their fathers.

Affirmed.