NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO F.H., S.H., M.A., and A.R.

No. 1 CA-JV 23-0218
FILED 06-06-2024

Appeal from the Superior Court in Maricopa County
No. JD509657
The Honorable Joshua D. Rogers, Judge

**AFFIRMED**

COUNSEL

Guadalupe M., Mesa
*Appellant*

Law Office of Ed Johnson, PLLC, Peoria
By Edward D. Johnson
*Advisory Counsel for Appellant Guadalupe M.*

Robert D. Rosanelli, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant Christopher H.*

Arizona Attorney General's Office, Phoenix
By Amber E. Pershon
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Maria Elena Cruz joined.

---

**B A I L E Y**, Judge:

**¶1**　　　　In this consolidated appeal, Guadalupe M. ("Mother")[1] appeals the termination of her parental rights to F.H., S.H., M.A., and A.R. (collectively, "the children"), and Christopher H. ("Father") appeals the termination of his parental rights to M.A.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**　　　　"We view the facts in the light most favorable to upholding the [superior] court's order."  *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010) (citation omitted).

**¶3**　　　　Mother is the biological parent of twins F.H. and S.H., born in 2019, M.A., born in 2020, and A.R., born in 2022.  Father is the biological parent of M.A.

**¶4**　　　　In March 2022, A.R. was born substance-exposed.  A month later, the Department of Child Safety ("DCS") filed a dependency petition against Mother and Father.  The petition alleged the children were dependent because of Mother's substance abuse, untreated mental health issues, and domestic violence incidents involving her former partners.  The petition also alleged that Mother did not provide for the children's basic needs because she weaned A.R. off seizure medication without physician approval and did not have supplies to care for the children.  The petition alleged Father abandoned M.A. and failed to provide for M.A.'s basic needs.  Neither parent contested the dependency petition, and the court found the children dependent as to Mother and M.A. dependent also as to Father.  When DCS filed the petition, Father had not established paternity of M.A.  Later, Father's paternity test confirmed he is M.A.'s father.

---

[1] Mother's assigned counsel filed a brief avowing he reviewed the record and found no non-frivolous issue to raise.  We ordered assigned counsel remain appointed as advisory counsel, and Mother filed a *pro se* brief.  Mother is also known as Guadalupe R.

¶5        DCS offered Mother reunification services, including drug testing, substance abuse treatment, housing and employment resources through Family Connections, visitation, transportation, bus passes, and parenting skills classes.  The DCS case manager also scheduled a two-hour meeting with Mother to discuss housing resources but had to reschedule because Mother fell asleep during the meeting.

¶6        In April 2022, Mother tested positive for methamphetamine and amphetamine.[2]  Mother did not submit to another test during the dependency.  She did not participate in Family Connections or the parenting skills classes.  Although Mother participated in a few substance abuse treatment sessions through the program offered by DCS, she did not complete the program.  Mother also independently started two substance abuse treatment programs but left both programs after a few days.

¶7        Mother participated in visitation with the children.  She brought food for the children but did not consistently bring diapers and wipes.  M.A.'s doctor said he could not have sweetened drinks because of stomach issues.  Mother knew about the doctor's note, but she continued to give M.A. sweetened drinks and argued with the case aides when they tried to prevent her from giving him the drinks.  The case aides also reported that Mother yelled and cursed at them in front of the children.

¶8        Father began a five-year prison sentence for a Class 2 felony in October 2021 and is scheduled to be released in July 2025.  He began virtual visitation with M.A. in February 2023.  Father sent no gifts, cards, or letters to M.A., and he did not routinely contact DCS about M.A.

¶9        In June 2023, DCS moved to change the case plan to severance and adoption.  The superior court granted DCS's motion.  A month later, DCS moved to terminate Mother's parental rights under the prolonged substance abuse and six- and nine-month out-of-home placement grounds and Father's parental rights under the length-of-incarceration-for-a-felony-conviction ground.  The superior court held a one-day contested severance hearing in September 2023, receiving testimony from the DCS case manager, Mother, and a proposed relative placement.  Father gave a statement but did not testify.

---

[2] After Mother gave birth to A.R., the hospital gave Mother medication that would have made her test positive for amphetamine, but the medication would not have made her test positive for methamphetamine.

**¶10** The superior court found termination was in the children's best interests and terminated Mother's and Father's parental rights on each ground alleged.

**¶11** We have jurisdiction over Mother's and Father's timely appeals under Article 6, Section 9, of the Arizona Constitution, Arizona Revised Statutes ("A.R.S.") sections 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1), and Rule 601 of the Arizona Rules of Procedure for the Juvenile Court.

## DISCUSSION

### I. Mother's Appeal

**¶12** Mother's opening brief does not comply with rules requiring citations to legal authority and the record. *See* Ariz. R.P. Juv. Ct. 607(b); ARCAP 13(a)(7)(A)–(B). We could conclude Mother waived her arguments, *see State v. Moody*, 208 Ariz. 424, 452, ¶ 101 n.9 (2004), but we choose to address the merits.

#### A. Nine-Month Out-Of-Home Placement Ground

**¶13** To terminate parental rights, a court must find clear and convincing evidence of at least one statutory ground in A.R.S. § 8-533(B) and find by a preponderance of the evidence that termination is in the children's best interests. *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000); *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (citation omitted), we will accept its factual findings if supported by reasonable evidence and inferences, and we will affirm the order terminating parental rights unless it is clearly erroneous, *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478–79, ¶¶ 30–31 (2023) (citations omitted).

**¶14** A court may terminate a parent's rights when: (1) "[t]he child[ren] ha[ve] been in [] out-of-home placement[s] for a cumulative total period of nine months or longer pursuant to court order"; (2) "the parent has substantially neglected or wilfully refused to remedy the circumstances that cause the child[ren] to be in [] out-of-home placement[s]"; and (3) DCS "made a diligent effort to provide appropriate reunification services." A.R.S. § 8-533(B)(8)(a).

4

¶15        Mother does not dispute that the children were in out-of-home placements for at least nine months.  The children were in out-of-home placements from April 2022 to September 2023, which exceeds nine months.

¶16        Mother argues she "never stopped testing."  We interpret this as challenging the superior court's finding that Mother substantially neglected or wilfully refused to remedy the circumstances causing the children's out-of-home placements.  The superior court found "Mother is not and has not taken any of the steps necessary to address the issues that brought the children into care" because Mother refused to address her substance abuse issues, failed to engage in treatment services, failed to complete drug testing, and failed to obtain stable housing and employment.

¶17        Reasonable evidence supports the superior court's findings.  Mother submitted to only one drug test during the dependency, which was positive for methamphetamine.  Mother participated in only a few substance abuse treatment sessions through the program offered by DCS, and she left two other substance abuse treatment programs after a few days.  Mother also did not participate in the parenting skills classes or obtain stable housing or employment.  Finally, although Mother participated in visitation with the children, she acted inappropriately by yelling and cursing at the case aides in front of the children and giving M.A. sweetened drinks against medical advice.

¶18        On appeal, Mother states she is now participating in substance abuse treatment and drug testing.  She testified at the contested severance hearing that she planned to start a substance abuse treatment program.  The superior court noted that even if Mother started the program after the hearing, "the children would remain in care for a very long period before Mother could complete the program."  "Leaving the window of opportunity for remediation open indefinitely is not necessary, nor . . . is [it] in the child's or the parent's best interests."  *Maricopa Cnty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994) (citation omitted).  Mother's current efforts, though commendable, are "'too little, too late,' for purposes of this severance action."  *See id.*

¶19        Mother argues she "asked a number of times for help from DCS" but DCS did not help her because "DCS had already placed all [four] children with famil[ies] that wanted to keep them."  DCS must provide a parent with the "time and opportunity to participate in programs designed to help her become an effective parent," but DCS need not provide "every conceivable service or [] ensure that a parent participates in each service it

offers." *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994) (citation omitted). The superior court listed the services offered by DCS in its ruling and found that DCS had made a diligent effort to provide Mother with reunification services.

**¶20** Reasonable evidence supports the superior court's findings. DCS offered Mother drug testing, substance abuse treatment, housing and employment resources, visitation, parenting skills classes, transportation, and bus passes. DCS also resubmitted referrals when Mother did not engage in services.

**¶21** Mother's opening brief does not identify what services she claims DCS refused to give her. At the contested severance hearing, Mother said DCS would not help her with housing. The DCS case manager testified that she met with Mother to discuss housing resources and provided Mother with housing resources through Family Connections. Mother's testimony conflicted with the case manager's testimony, but the superior court did not find Mother's testimony credible. We do not reweigh evidence. *See Jordan C.*, 223 Ariz. at 93, ¶ 18.

**¶22** Reasonable evidence supports the superior court's termination of Mother's rights under the nine-month out-of-home placement ground. "If clear and convincing evidence supports any one of the statutory grounds on which the [superior] court ordered severance, we need not address claims pertaining to the other grounds." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002) (citations omitted). Thus, we do not address the six-month or chronic substance abuse grounds.

### B. Best Interests Determination

**¶23** Mother also argues "the best interest of the children is [to be] with [their] mother." "[A] determination of the child[ren]'s best interest[s] must include a finding as to how the child[ren] would benefit from a severance *or* be harmed by the continuation of the relationship." *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990) (citations omitted). The court may consider the "child[ren]'s adoptability and the parent's rehabilitation." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148, ¶ 1 (2018). Here, the superior court found the children would benefit from termination because they were thriving in their current placements, and their placements intended to proceed with adoption.

**¶24** Reasonable evidence supports the superior court's findings. The DCS case manager testified the children were doing well with their placements, had bonded with them, and the current foster families were

prospective adoptive placements. The case manager also testified that the children were otherwise adoptable if the current placements could not proceed with adoption.

**¶25** Mother states in her opening brief that A.R. was abused in a foster home. DCS records show that A.R. was removed from a foster home after three months because of an investigation involving a different child in the placement's care. DCS placed A.R. with a new family, and the case manager testified A.R. was doing well in her new placement. The superior court's best interests finding was based on A.R.'s new placement, and reasonable evidence supports that finding.

## II. Father's Appeal

**¶26** Citing the Parents' Bill of Rights, Father argues the superior court erred by terminating his parental rights instead of appointing a guardian because a guardianship would have been less restrictive. *See* A.R.S. §§ 1-601 to -602. We review statutory interpretation issues de novo. *Brenda D. v. Dep't of Child Safety*, 243 Ariz. 437, 442, ¶ 15 (2018). Father did not argue to the superior court that the Parents' Bill of Rights mandated a guardianship. So, Father must show fundamental error to prevail. *See id.* at 447–48, ¶¶ 37–38.

**¶27** Section 1-601 states that parents have a fundamental right to "direct the upbringing, education, health care and mental health of their children," and the state shall not infringe on that right "without demonstrating that the compelling governmental interest as applied to the child involved is of the highest order, is narrowly tailored and is not otherwise served by a less restrictive means."

**¶28** A party may file a motion for a permanent guardianship, *see* A.R.S. § 8-872(A), but the superior court lacks the authority to establish a guardianship sua sponte, *see Ariz. Dep't of Econ. Sec. v. Stanford*, 234 Ariz. 477, 480, ¶¶ 12–14 (App. 2014). The motion must include "[t]he name and address of the prospective guardian and a statement that the prospective guardian agrees to accept the duties and responsibilities of guardianship." A.R.S. § 8-872(A)(3). Father elicited testimony about a guardianship, and a relative testified that she was willing to be a guardian, but Father did not file a motion that complied with A.R.S. § 8-872. Further, a court may establish a permanent guardianship only when "[t]he likelihood that the child would be adopted is remote or termination of parental rights would not be in the child's best interests." A.R.S. § 8-871(A)(4). Here, the superior court found that M.A.'s placement intended to adopt him, and termination

was in M.A.'s best interests. Thus, the superior court did not err because it could not have established a guardianship.

**¶29** Father also argues the Parents' Bill of Rights required DCS to move to establish a permanent guardianship. The party filing the motion has the burden of proving, by clear and convincing evidence, that a guardianship is in the child's best interests. A.R.S. §§ 8-871(A), -872(H). The DCS case manager testified at the contested severance hearing that a guardianship would not be beneficial in this case. DCS filing a motion for a guardianship would be inconsistent with that testimony. Further, "[a]ny party to a dependency proceeding" may move to establish a permanent guardianship, A.R.S. § 8-872(A), and Father fails to explain why he did not do so.

## CONCLUSION

**¶30** We affirm.

