IN THE

# ARIZONA COURT OF APPEALS

### DIVISION TWO

_____

ARIZONA DEPARTMENT OF ECONOMIC SECURITY,
*Petitioner*,

*v.*

HON. K.C. STANFORD, JUDGE OF THE SUPERIOR COURT OF THE STATE OF
ARIZONA, IN AND FOR THE COUNTY OF PIMA,
*Respondent,*

*and*

J.P., J.P., AND FALICIA W.,
*Real Parties in Interest.*

No. 2 CA-SA 2014-0008
Filed May 5, 2014

_____

Special Action Proceeding
Pima County Cause No. JD193361

**JURISDICTION ACCEPTED; RELIEF GRANTED**

_____

COUNSEL

Thomas C. Horne, Arizona Attorney General
By Dawn R. Williams, Assistant Attorney General, Tucson
*Counsel for Petitioner*

Peter G. Schmerl, P.C., Tucson
By Peter G. Schmerl
*Counsel for Real Party in Interest J.P.*

Pima County Office of Children's Counsel, Tucson
By Sara E. Goldfarb
*Counsel for Real Party in Interest J.P.*

---

**OPINION**

---

Presiding Judge Vásquez authored the opinion of the Court, in which Judge Miller and Judge Brammer[1] concurred.

---

V Á S Q U E Z, Presiding Judge:

**¶1**　　　　In this special action, petitioner Arizona Department of Economic Security (ADES) maintains the respondent judge "act[ed] in excess of his authority when he sua sponte moved to establish a permanent guardianship for" two brothers, J.P. and J.P.[2]  For the following reasons, we accept jurisdiction and grant relief.

**Factual and Procedural Background**

**¶2**　　　　In January 2010, ADES filed a dependency petition, alleging the brothers were dependent as to their mother Stephanie P. In March 2010, they were adjudicated dependent.  On February 17, 2012, the parents' parental rights were severed, and both children were placed with their maternal grandmother, Vickie, who since has died.

**¶3**　　　　Since that time, the children have been in various placements.  A maternal aunt, Falicia, who resides in Kentucky, has cared for them in the past and would like to become their guardian. ADES pursued placement with Falicia, but when Kentucky was

---

[1]The Hon. J. William Brammer, Jr., a retired judge of this court, is called back to active duty to serve on this case pursuant to orders of this court and the supreme court.

[2]To preserve their anonymity, we hereinafter refer to J.P. represented by Schmerl as John and J.P. represented by Goldfarb as James.

requested to conduct a home study, it denied ADES's request made pursuant to the Interstate Compact for the Placement of Children (ICPC), citing Falicia's husband's past criminal history.

¶4            In August 2013, however, John filed a motion to appoint Falicia as his permanent guardian.  In its response, ADES argued that under the ICPC a permanent guardianship could not be established with Falicia due to Kentucky's denial of placement with her.  At a subsequent hearing on September 25, 2013, John withdrew his motion.  The respondent judge, however, stated in his minute entry that he would "set a hearing as to granting the guardianship, and . . . independently examine the best interest of the minors for an appointment of the maternal aunt as guardian."

¶5            ADES filed a motion for reconsideration of the "court's motion for establishment of a permanent guardianship," in which it repeated its ICPC concerns and argued the respondent judge "lack[ed] jurisdiction to move for a guardianship under A.R.S. § 8-872(A) and that such a course of action violates the ICPC."  The respondent denied the motion, noting the superior court's inherent power to act sua sponte and the fact that all parties had received adequate notice of a guardianship proceeding.  The respondent further noted that "[a]bsent objection of any party . . . the potential guardian may be granted intervener status with her consent at the [scheduled] hearing."

¶6            At the hearing on November 19, Falicia orally moved to intervene, and the respondent judge granted the motion.  According to the minute entry, Falicia also "state[d] her position is that the children should be placed with her."  The respondent received testimony from Falicia on that date and from her and her husband at a continued hearing the following day.  According to the minute entry, after the second day of the hearing, the respondent directed ADES "to make another referral for an ICPC for Kentucky to see if Kentucky will look at this a second time" and scheduled further hearings and reviews.  This court subsequently granted ADES's request to stay those proceedings.

¶7            It is appropriate for us to accept jurisdiction of this special action because the questions presented are purely legal.  *See*

*Ariz. Dep't of Econ. Sec. v. Leonardo*, 200 Ariz. 74, ¶ 1, 22 P.3d 513, 514 (App. 2001). And, although a final order making Falicia the children's permanent guardian would be appealable, *see* A.R.S. § 8-235, this matter presents "a significant issue of law that may be decided as well now as in a later appeal" in order to avoid a delay in the children's possible placement, *J.A.R. v. Superior Court*, 179 Ariz. 267, 273, 877 P.2d 1323, 1329 (App. 1994).

**Discussion**

**¶8** ADES first challenges the respondent judge's "authority to move to establish a permanent guardianship for the children." As we noted above, after John withdrew his motion requesting that Falicia be appointed permanent guardian, the respondent sua sponte ordered a hearing on guardianship, later characterizing the proceeding at the hearing, in part, as his own "sua sponte motion" for guardianship. When ADES objected, the respondent issued his written ruling, pointing out that all parties had received adequate notice of the date and nature of the hearing and noting a court's general powers to act sua sponte in various contexts. He also cited a California case in support of the proposition that "[s]ister state jurisdictions support sua sponte motions in the dependency context."[3] The respondent further stated that the "issue of ICPC preclusions, limitations, circumventions or implications, remain to be argued and addressed at the hearing."

---

[3]The juvenile court relied on *San Diego County Department of Social Services v. Superior Court*, 919 P.2d 1329 (Cal. 1996). There, the California Supreme Court held the juvenile court erred by refusing to schedule a hearing on adoption in place of long-term foster care placement unless a petition for modification based on changed circumstances was filed. *Id.* at 1336. But the court based its holding on Rule 1466(b), Cal. R. Ct., which it observed did not prohibit the juvenile court from considering, sua sponte or on request of a party, the continuing propriety of long-term foster care placement at regularly scheduled review hearings even in the absence of a petition for modification. *San Diego Cnty. Dep't of Soc. Servs.*, 919 P.2d at 1334 (Rule 1466(b) has been renumbered to Rule 5.740(b), Cal. R. Ct.).

¶9          The jurisdiction of the juvenile court is provided by statute.  Pursuant to article VI, § 15 of the Arizona Constitution, "[t]he jurisdiction and authority of the courts of this state in all proceedings and matters affecting juveniles shall be as provided by the legislature or the people by initiative or referendum."  Thus, although a juvenile court has jurisdiction over permanent guardianship proceedings under A.R.S. §§ 8-871 through 8-874, those proceedings and the court's jurisdiction over them are circumscribed by statute.  *See In re Stephanie N.*, 210 Ariz. 317, ¶¶ 10-12, 110 P.3d 1280, 1282 (App. 2005) (when court's authority created by statute, it "must be exercised within the terms of the applicable statutes").

¶10          Section 8-871(A) provides that a court may establish a permanent guardianship if in the child's best interests and certain statutory requirements are met.  These requirements include that the child be "in the custody of the prospective permanent guardian for at least nine months as a dependent child," although that requirement may be waived for good cause.[4]  § 8-871(A)(2).  The procedure by which a court may establish a permanent guardianship under § 8-871, however, is set forth in § 8-872.  That section provides that "[a]ny party to a dependency proceeding may file a motion for permanent guardianship" and sets forth the requirements for such a motion, including that it be verified and contain various facts about the prospective guardian, the child, and their relationship.  § 8-872(A).  The party filing the motion also is required to "serve notice of the hearing and a copy of the motion." § 8-872(B).  And, the party who files the motion "has the burden of proof" in subsequent hearings on the motion.[5]  § 8-872(F).

---

[4]The children here have not been living with Falicia, and the respondent judge has made no ruling as to good cause for waiving that requirement.

[5]As ADES points out, this statutory procedure constitutes a change from that provided in the former statutory scheme, which permitted anyone to file a petition for a permanent guardianship, outside of a dependency proceeding.  1999 Ariz. Sess. Laws, ch. 81, § 4.

**¶11**        In keeping with the above statutory scheme, the Arizona Rules of Procedure for the Juvenile Court provide that if a juvenile court "determines that the establishment of a permanent guardianship is in the best interests of a dependent child, the court shall order that a motion for guardianship be filed by" ADES or "the child's attorney or guardian ad litem."  Ariz. R. P. Juv. Ct. 61(A). Nothing in the rules provides a court with authority to proceed on its own motion; rather, Rule 61 directs a court to order a motion to be filed as required by statute.

**¶12**        As the respondent judge noted, a court has certain inherent authority.  The juvenile court, in particular, has inherent powers for the protection of children.  *Cf. Ariz. Dep't of Econ. Sec. v. Superior Court,* 178 Ariz. 236, 241, 871 P.2d 1172, 1177 (App. 1994) (juvenile court has authority to order ADES substituted as petitioner in dependency action).  But, that inherent power exists only to the extent "necessary to the ordinary and efficient exercise of jurisdiction" already established.  *State ex rel. Andrews v. Superior Court,* 39 Ariz. 242, 247-48, 5 P.2d 192, 194-95 (1931) (citation omitted).  And, the court's discretion to engage in "'individualized procedures designed to promote the ends of justice in each case that comes before'" it is limited in that such procedures may not be "'inconsistent with statutory or constitutional provisions or other rules of the court.'"  *State v. Harlow*, 219 Ariz. 511, ¶ 10, 200 P.3d 1008, 1011 (App. 2008), *quoting State v. Fernandez*, 216 Ariz. 545, ¶ 16, 169 P.3d 641, 647 (App. 2007).

**¶13**        In view of the statutory requirements for guardianship proceedings and the related procedural rules, the actions taken by the respondent judge were not a proper exercise of the inherent power of a juvenile court.  His actions conflicted with the statutes and rules controlling guardianship proceedings, and, because the statute provides for a guardianship proceeding based only on a motion filed by a party to a dependency proceeding, in the absence of a motion filed pursuant to § 8-872, there was no guardianship proceeding within the respondent's jurisdiction.  As noted above, a court's inherent powers do not extend beyond its jurisdiction.  *See Andrews*, 39 Ariz. at 247-48, 5 P.2d at 194-95.

¶14 In this case, although the record shows Falicia ultimately intervened in the proceedings,[6] nothing in the record suggests she has complied with the requirements of § 8-872. And, in no way can the respondent judge's "sua sponte motion" be characterized as compliant with the statutory requirements. For these reasons, we agree with ADES that the respondent exceeded his authority in continuing with the guardianship proceedings in the absence of a statutorily compliant motion by a party to the proceedings.

¶15 ADES also argues "[t]he proposed guardianship placement will violate the ICPC." We agree. And, as noted above, at the hearing on the guardianship, the respondent judge asked ADES to make another ICPC request with Kentucky, indicating that he viewed Kentucky's cooperation as necessary to guardianship placement there.[7]

¶16 The ICPC is an interstate compact that facilitates interstate cooperation in the placement and monitoring of dependent children. *Leonardo*, 200 Ariz. 74, ¶ 9, 22 P.3d at 516. The ICPC "is geared toward gathering information prior to placement in order to ensure that the sending and receiving states work together to place the child in a good environment, and toward monitoring

---

[6]Pursuant to Rule 37(A), Ariz. R. P. Juv. Ct., a "party" to a dependency action includes "any person or entity who has been permitted to intervene pursuant to Rule 24, Ariz. R. Civ. P." Rule 24(c) requires that a person seeking to intervene "serve a motion to intervene upon the parties as provided in Rule 5," Ariz. R. Civ. P. ADES apparently objected to Falicia "being granted party status" at the November 19 hearing, but the basis for that objection is unclear, and ADES makes no argument relating expressly to intervention in its petition for special action. We therefore do not address the propriety of the intervention.

[7]ADES advised this court during oral argument that it had made a second ICPC request at the juvenile court's instruction and that the Kentucky authorities again denied the request.

and providing care for the child following placement." *Id.* (citation omitted).

¶17        Arizona is a party to the ICPC, which has been enacted in Arizona as A.R.S. § 8-548.  Article III of § 8-548 mandates:

> (b) Prior to sending, bringing or causing any child to be sent or brought into a receiving state for placement in foster care or as a preliminary to a possible adoption, the sending agency shall furnish the appropriate public authorities in the receiving state written notice of the intention to send, bring, or place the child in the receiving state. . . .
>
> . . . .
>
> (d) The child shall not be sent, brought, or caused to be sent or brought into the receiving state until the appropriate public authorities in the receiving state shall notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interests of the child.

¶18        Under the ICPC regulations, promulgated by the Association of Administrators of the ICPC (AAICPC) pursuant to article VII of § 8-548, the above terms of the ICPC apply to placement "with parents and relatives" and non-agency guardians, except when a parent or relative also is requesting the placement under certain circumstances.  *See* ICPC Reg. 3(2)(a)(3) and 10(3)(a), *available at* www.aphsa.org/content/AAICPC/en/ICPCRegulations.html; *see also* § 8-548 art. VIII(a).  Regulation 3(3)(c) also allows certain relatives or a non-agency guardian to request a placement in a receiving state with another relative or non-agency guardian without ICPC protection, but the sending guardian must have legal rights to plan for the child established by law "prior to initiation of

the placement arrangement." On the record before us, none of the relative-related exceptions apply here.

¶19      Although Falicia would physically remove the children to Kentucky if she were appointed their guardian, she would be able to do so lawfully only because of the respondent judge's guardianship order. *See* A.R.S. §§ 8-871(D) (permanent guardian vested with rights and responsibilities), 14-5209(C)(2) (guardian may establish child's residence outside state); *cf.* A.R.S. § 13-1302(A) (custodial interference). Thus, we agree with the Oregon Supreme Court's reasoning and conclusion in *State ex rel. Juvenile Department of Curry County v. Campbell* that when a permanent guardianship is granted to a person who lives in another state, the court granting that guardianship is a "sending agency"[8] that causes the child to be brought into the receiving state. 36 P.3d 989, 992-93 (Or. 2001). By its terms, as outlined above, the requirements of the ICPC apply to such a situation.[9]

¶20      John, however, argues "[t]he purpose of the ICPC is to assist courts—not hinder them," as he suggests the ICPC does in this case and urges us to "reconsider" our decision in *Leonardo*. In that case, this court rejected the conclusion in a Third Circuit Court of Appeals decision, *McComb v. Wambaugh*, 934 F.2d 474 (3d Cir. 1991), that the then-current version of Regulation 3, dealing with the placement of a child with a non-custodial parent, was contrary to the ICPC and, therefore, invalid. *Leonardo*, 200 Ariz. 74, ¶ 21, 22 P.3d at 520. The *McComb* court reasoned that placement with a parent was outside the scope of article III of the ICPC, which "refers to 'placement in foster care or as a preliminary to possible adoption,'" and that such placement therefore was not subject to the ICPC. 934 F.2d at 481.

---

[8] The definition of a "[s]ending agency" under the ICPC includes "a court of a party state." § 8-548 art. II(b).

[9] At oral argument before this court, John's attorney conceded that if the juvenile court placed John with Falicia it would, as the situation now stands, violate the plain language of the ICPC.

**¶21** In *Leonardo*, we rejected the *McComb* court's narrow construction of the ICPC and "agree[d] instead with the majority of jurisdictions that have found the ICPC applicable to out-of-state placement of a child with a non-custodial parent." 200 Ariz. 74, ¶ 21, 22 P.3d at 520. We see no grounds to depart from our previous decision and decline to do so. *Cf. State v. Hickman*, 205 Ariz. 192, ¶¶ 37-38, 68 P.3d 418, 426-27 (2003) (explaining respect for precedent requires court not overrule precedent absent compelling reasons, and deference to precedent strongest when prior decision construes statute). As we stated in *Leonardo*, the ICPC is to be interpreted liberally because "the primary purpose of the ICPC is to protect children by making certain they are placed in a safe environment." 200 Ariz. 74, ¶ 22, 22 P.3d at 521. As ADES points out here, absent Kentucky's cooperation through the ICPC, it will be extremely difficult for the requirements of § 8-872 to be complied with. That statute requires an investigation to determine "whether the prospective permanent guardian or guardians are fit and proper persons," § 8-872(E), and "a report and review" within a year of the entry of the guardianship order, § 8-872(I). Absent compliance with the ICPC, it is unclear how such proceedings could occur effectively or how the safety and best interests of the children could be ensured.

**¶22** John also asserts that, despite the clear language of the ICPC, the respondent judge could "use[] judicial discretion to do what was in the minors' best interests" and "find a way to place them back with their Aunt." But, as discussed above, the juvenile court's jurisdiction is circumscribed by statute and is thus subject to the ICPC. The respondent therefore cannot circumvent the requirements of the ICPC.

## Disposition

**¶23** For the reasons stated, in our discretion we accept jurisdiction of this special action. Because the respondent judge "has proceeded or is threatening to proceed without or in excess of jurisdiction or legal authority," Ariz. R. P. Spec. Actions 3(b), by considering a sua sponte motion for permanent guardianship, we grant ADES relief by vacating the respondent's own motion for permanent guardianship made on September 25, 2013. Accordingly, we order further proceedings consistent with this opinion.