NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

DOUGLAS F.,
*Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, S.R.,
*Appellees*.

No. 1 CA-JV 14-0250
FILED 7-9-2015

Appeal from the Superior Court in Maricopa County
No. JD21693
The Honorable Joan Sinclair, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate's Office, Mesa
By David C. Lieb
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Erika Z Alfred
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Patricia A. Orozco delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge Kent E. Cattani joined.

---

**O R O Z C O**, Judge:

¶1　　　　Douglas F. (Father) appeals from the termination of his parental rights to S.R.　For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2　　　　S.R. was born on March 21, 2006.　Father claimed he lived with S.R. from July 2007 until his incarceration in October 2008.

¶3　　　　Department of Child Services (DCS) filed a dependency petition in 2012, alleging S.R. was dependent because Father was incarcerated.　The juvenile court adjudicated S.R. dependent.

¶4　　　　Father has "had a substance abuse problem on and off" since he was in his twenties.　After being released from prison in 2012, Father was required to submit to periodic urinalysis testing.　Father tested positive for methamphetamines and was again incarcerated in March 2013 for 2.25 years after pleading guilty to attempted robbery.　After his release, Father began visiting S.R., but stopped seeing her during the first week of February 2013 because a warrant was issued for his arrest.　DCS filed a severance motion and at the severance hearing, Father testified he would have to serve an additional three or four months for a parole violation.

¶5　　　　Father asserted he had fourteen or fifteen visits with S.R. from October 2008 until February 2014, and that he sent S.R. gifts and spoke to her on the phone while he was incarcerated.　He acknowledged, however, that his incarceration damaged their relationship.　The record indicated that S.R. had three supervised visits with Father in prison, and S.R. told a DCS case manager that she was very nervous about visiting Father because she did not know him and had not seen him since she was a baby.

¶6　　　　At the time of the severance, Father was incarcerated and S.R. had been in out-of-home placement, pursuant to court order, for twenty-

three months.[1]  S.R. had been living with her great aunt and uncle, who wanted to adopt S.R. and her half-sister.  The DCS case manager testified that S.R. was bonded to her caregivers and the bond would be disrupted if Father's rights were not severed.  Father admitted that it would be "impossible" for him to provide S.R. with a safe and stable home environment while incarcerated.

¶7        The juvenile court granted the severance, finding DCS "met its burden of proof on the length of felony incarceration ground for Father" under Arizona Revised Statutes (A.R.S.) section 8-533.B.4. (West 2015)[2] and further found that severance was in S.R.'s best interest.  Father timely appealed and we have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and A.R.S. §§ 8-235.A, 12-120.21.A.1, and -2101.A.

**DISCUSSION**

¶8        Father argues termination by the court was clearly erroneous. We review an order terminating parental rights for an abuse of discretion and will affirm if the ruling is supported by sufficient evidence.  *Calvin B. v. Brittany B.*, 232 Ariz. 292, 296, ¶ 17 (App. 2013).  "We view the evidence in the light most favorable to sustaining the [juvenile] court's ruling."  *Id.*

> "To terminate parental rights, a juvenile court must first find by clear and convincing evidence . . . the existence of at least one statutory ground for termination pursuant to [A.R.S.] § 8-533(B), and must also find by a preponderance of the evidence that termination is in the child's best interests."

*Jennifer G. v. Ariz. Dep't. of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 (App. 2005).

I.    Grounds for Termination

¶9        Under A.R.S. § 8-533.B.4, grounds for termination include:

> That the parent is deprived of civil liberties due to the conviction of a felony . . . of such nature as to prove the

---

[1]    Father was charged with his seventh felony in Arizona.  Mother, who is not a party in this appeal, was also incarcerated during the severance proceedings.  The juvenile court also terminated Mother's parental rights.

[2]    We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

unfitness of that parent to have future custody and control of the child, including . . . if the sentence of that parent is of such a length that the child will be deprived of a normal home for a period of years.

**¶10** There is no "bright line" definition for determining when a sentence is sufficiently long to deprive the child of a normal home, and we review each case based on its particular facts. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251, ¶ 29 (App. 2000).

> The [juvenile] court, in making its decision, should consider all relevant factors, including, but not limited to: (1) the length and strength of the parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue. After considering those and other relevant factors, the [juvenile] court can determine whether the sentence is of such a length as to deprive a child of a normal home for a period of years.

*Id.* at 251-52, ¶ 29. "A lack of evidence on one of the *Michael J.* factors may or may not require reversal or remand on a severance order . . . [T]here is no threshold level under each individual factor . . . that either compels, or forbids, severance." *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 450, ¶ 15 (App. 2007).

**¶11** We find sufficient evidence supports the juvenile court's findings for termination under A.R.S. § 8-533.B.4. As to the first two factors, regarding the parent child relationship, the juvenile court noted that Father had been incarcerated most of S.R.'s life and that "he has not parented [S.R.] since 2008 if in fact he was doing so earlier." Father was first incarcerated for over four years when S.R. was two-and-a half years-old. He was on release for approximately four months before he was re-incarcerated. Although Father testified that he spoke to his daughter on the phone, sent her gifts, and arranged for her to visit him in prison, he also acknowledged his incarceration damaged their relationship and S.R. purportedly claimed to not know him. Thus, there was evidence that S.R. did not have a strong relationship with Father and that it was unlikely their "damaged"

4

relationship could be "nurtured and continued" during Father's incarceration. Father notes that conflicting evidence was presented on this issue. However, we do not reweigh evidence, and only the juvenile court may assess a witness's credibility. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

**¶12**　　　　As to the third factor, the likelihood that the child will be deprived of a normal home, S.R. is currently nine years old, and Father testified that it would be "impossible" to provide her a safe and stable home environment while he is incarcerated. On appeal, however, Father argues that "the additional few months of [his] incarceration . . . would not deprive [S.R.] of a normal home due to the nature of her placement with her maternal great aunt and great uncle."

**¶13**　　　　We disagree. A "normal home" under A.R.S. § 8-533.B.4 refers to the terminated parent's ability to provide a home in which he is present and does not refer to such a home created by other family members. *See Maricopa Cnty. Juv. Action No. JS-5609*, 149 Ariz. 573, 575 (App. 1986).

**¶14**　　　　As to the fourth factor, the length of sentence, Father's sentence is for 2.25 years. Father contends he may be released "only seven or eight months after the last trial" and that even if he serves the maximum sentence, S.R. "would have many formative years of her life remaining to spend with her Father." However, Father overlooks the total amount of time he has been incarcerated. **"**[T]he legislature used the words 'will be deprived' in § 8-533(B)(4) to mean 'will have been deprived' in total, intending to encompass the entire period of the parent's incarceration and the absence from the home." *Jesus M.*, 203 Ariz. at 281, ¶ 8. Thus, Father's sentence deprived S.R. of a normal home for a period of years within the meaning of A.R.S. § 8-533.B.4.

**¶15**　　　　As to the fifth factor, the availability of the other parent to provide a normal home, Mother cannot provide a normal home because her rights were also terminated and she has not appealed the severance. Although this could weigh against severing Father's rights, the juvenile court's findings on the other considered factors were not clearly erroneous, and as stated before, we will not reweigh the evidence. *Supra* ¶ 12. Because we find Father's sentence is sufficiently long to deprive S.R. of a normal home under the first five *Michael J.* factors, we need not address the sixth.

II.     Best Interests

**¶16**        Father argues the juvenile court erred by determining severance was in S.R.'s best interests because it did not consider the possibility of instituting a guardianship over S.R.  The record reflects that S.R.'s caregivers considered a guardianship, but they never filed an application to that effect.  The juvenile court lacks jurisdiction to institute a guardianship *sua sponte*.  *See Ariz. Dep't of Econ. Sec. v. Stanford*, 234 Ariz. 477, 479-80, ¶¶ 9-14 (App. 2014).  Thus, this was not an option the juvenile court could consider.

**¶17**        Father also claims the juvenile court failed to make "a sufficient best interest finding."

> A determination of the children's best interest must include a finding as to how the children would benefit from a severance or be harmed by the continuation of the relationship.  Factors considered are whether: 1) an adoptive placement is immediately available; 2) the existing placement is meeting the needs of the child; and 3) the children are adoptable.

*Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 30 (App. 2010) (internal punctuation and citations omitted).

**¶18**        The juvenile court found, "[S.R. has] been in care for over two years.  [She is] in [a] family [placement] and [is] adoptable.  [She] need[s] and deserve[s] permanency.  The Court finds that it is in the best interest of [S.R.] to terminate [Father's] rights."

**¶19**        Sufficient evidence supports the juvenile court's findings that termination was in S.R.'s best interests.  S.R. was in the care of her great aunt and uncle, who expressed their willingness to adopt her.  Moreover, there was evidence that she had bonded to her caregivers and that this bond would be harmed if Father's rights were not severed.  Additionally, the DCS case manager testified that S.R.'s caregivers were meeting her physical, social, emotional, medical, and educational needs.  Thus, the juvenile court did not err in finding severance was in S.R.'s best interests.

**CONCLUSION**

**¶20**    We affirm the juvenile court's order terminating Father's parental rights.



Ruth A. Willingham · Clerk of the Court
FILED: ama