NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO D.L. and A.L.

No. 1 CA-JV 23-0221

FILED 07-30-2024

---

Appeal from the Superior Court in Maricopa County
No. JD15644
The Honorable Gregory Como, Judge

**AFFIRMED**

---

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer Blum
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Paul J. McMurdie delivered the Court's decision, in which Judge Maria Elena Cruz and Judge Cynthia J. Bailey joined.

---

**M c M U R D I E**, Judge:

¶1 Tatiana G. ("Mother") appeals from an order terminating her parental rights to two of her children. She argues that a termination based on physical abuse must show a specific risk to the children involved. We find no error and affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2 This appeal concerns Mother's parental rights about two of her children: Delaney,[1] born in 2007, and Austin, born in 2009. Mother's daughter, Tara, born in 2006, is also relevant here.

¶3 Mother's history with the Department of Child Safety ("Department") began in 2007 when a concerned relative filed a dependency petition alleging nine-month-old Tara was dependent because of neglect. Following reunification services, the juvenile court dismissed the dependency in 2009 and returned Tara to Mother's care. In 2016, Mother pushed Tara down, chipping her tooth, which the Department substantiated after its investigation. Around that time, Mother left Tara, Delaney, and Austin in their grandparents' care "so she could work on herself." Delaney and Austin have remained with their grandparents ever since.

¶4 In 2021, fifteen-year-old Tara moved back with Mother. Less than a year later, Mother and Tara got into an argument that turned physical. Mother assaulted Tara, inflicting bruising on her face, cut and swollen lips, bite marks and bruises on her arms, and road rash on her arm and lower body. Mother took Tara to her grandparents' house, who contacted the police, and Tara went to the hospital. The Department then filed a dependency petition as to Tara, Delaney, and Austin, alleging that all three children were at risk of abuse.

---

[1] We use pseudonyms to protect the children's identities.

¶5         Mother was already receiving Department services, including psychological evaluation, for a dependency involving another child. In her evaluation, Mother disclosed that she was diagnosed with bipolar disorder but did not take medication, nor was she engaged in mental health services. The evaluation noted that Mother "ha[d] a significant history of untreated mental health" and that "there [was] cause for concern regarding [Mother's] history of alcohol use[,] which appear[ed] to serve as a self-medicating function." The evaluation concluded there was sufficient evidence to support a diagnosis of alcohol use disorder and offered a provisional diagnosis of bipolar disorder. Still, the evaluation recommended "ongoing inquiry and observational assessment." As to whether Mother might discharge parental responsibilities in the near future, the evaluation concluded:

> My prognostic impression at this point is poor due to [Mother's] current degree of psychological distress caused by her untreated mental health, her lack of insight related to her mental health, her substance use, unknown sobriety status, refusal to engage in services, her ability to consistently provide for and meet the needs of her children, and the relationship difficulties/lack of between she and her children.

¶6         The Department referred Mother for other services, including substance abuse testing and treatment, psychiatric evaluation, individual counseling, the Family Connections program, and supervised visitation. From April 2022 through the end of the year, Mother engaged in her substance use testing and tested negative for drugs and alcohol. Mother also completed the recommended substance abuse treatment program and psychiatric evaluations by September 2022. Mother self-referred for individual counseling, and her therapist reported that she had engaged in sessions from July 2022 through the end of the year. Mother secured stable housing and employment.

¶7         Still, in February 2023, the Department moved to have grandparents appointed as Delaney and Austin's permanent guardians. The same day, the children moved to terminate Mother's parental rights on the physical abuse, mental illness, and nine-month time-in-care grounds. The Department requested to withdraw the guardianship motion, and the juvenile court granted the request, noting that the children "do not want guardianship and wish to be adopted." The juvenile court substituted the Department as the petitioner in the termination motion.

¶8  The Department referred Mother for the Nurturing Parenting Skills Program in March 2023, but Mother disengaged from the service, and it closed for lack of contact. Between February and July 2023, Mother's participation in substance-abuse testing was less consistent, and she tested positive for alcohol in April and June 2023. Still, the Department admitted that Mother had significantly improved regarding substance abuse.

¶9  The juvenile court held a contested severance hearing in October 2023. Following the hearing, the court terminated Mother's parental rights to Delaney and Austin on physical abuse, mental illness, and nine months' time-in-care grounds. *See* A.R.S. § 8-533(B)(2), (3), (8)(a). The court considered that Mother had physically abused Tara in April 2022 and September 2016. It explained that although there were no reports of Mother abusing Delaney or Austin, they had not lived with her for many years, so it was "not surprising that they have not been physically abused by Mother." It also noted that Mother had "not addressed her mental illness in a meaningful way," which meant it was likely that "the underlying cause of her violent temper [would] remain present." Finally, the court found that the termination of Mother's parental rights was in the children's best interests because Mother was unlikely to address the issues causing the out-of-home placement, and termination would allow the children to be adopted by their grandparents.

¶10  Mother appealed. This court has jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

## DISCUSSION

¶11  Mother challenges the order terminating her parental rights. We will affirm a termination order unless the juvenile court abused its discretion or its factual findings were clearly erroneous. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). "The juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). We accept the juvenile court's factual findings unless no reasonable evidence supports them. *Id.* We do not reweigh the evidence. *Mary Lou C.*, 207 Ariz. at 47, ¶ 8.

**A. The Juvenile Court Did Not Abuse Its Discretion by Terminating Mother's Parental Rights.**

¶12  The juvenile court may terminate parental rights if there is evidence "[t]hat the parent has neglected or wilfully abused a child,"

causing "serious physical or emotional injury." A.R.S. § 8-533(B)(2). "[I]f a parent neglects or abuses a child, the court may terminate that parent's rights to their other children on this basis, even if there is no evidence that the other children were harmed." *See Sandra R. v. Dep't of Child Safety*, 248 Ariz. 224, 227, ¶ 13 (2020) (citing *Linda V. v. Ariz. Dep't of Econ Sec.*, 211 Ariz. 76, 79, ¶ 14 (App. 2005)). But finding parental unfitness requires "a demonstrable connection between the ground for termination and the harm or risk of harm to a child." *Id.* at 229, ¶ 24. So, the "court may terminate a parent's rights to non-abused children under [A.R.S.] § 8-533(B)(2) only if the extrapolation of unfitness — the risk of harm to such children — is proven by clear and convincing evidence." *Id.*

**¶13**　　　　Mother argues that it was inappropriate to sever her rights as to Delaney and Austin on physical abuse grounds when the Department only presented evidence of physical confrontation between her and Tara. She contends that the Department had to prove Delaney and Austin "were specifically at risk from Mother" before terminating her parental rights. *See Sandra R.*, 248 Ariz. at 229, ¶ 24.

**¶14**　　　　But Mother overstates *Sandra R.* Although "a juvenile court is encouraged to make express findings concerning the risk of harm to non-abused children," all *Sandra R.* requires is that "the risk of harm to non-abused children is proven by clear and convincing evidence." *See Sandra R.*, 248 Ariz. at 230, ¶ 27. And "the record may implicitly support a juvenile court's termination order" on the physical abuse ground when abuse "readily demonstrates a comparable risk" to a parent's other, similarly aged children. *See id.* Another factor courts may consider when assessing the abuse risk is whether the parent accepts or denies responsibility for past instances of abuse. *See Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 51, ¶ 16 (App. 2016).

**¶15**　　　　Tara is just one year older than Delaney and less than three years older than Austin. Mother has been involved in at least two episodes of physical violence with Tara for over six years. And the court found that Mother deflected responsibility for her actions, "minimiz[ing] the [2022] altercation by describing it as a 'scuffle.'" On these facts, the juvenile court did not abuse its discretion by finding severance was appropriate under A.R.S. § 8-533(B)(2).

**¶16**　　　　The juvenile court also terminated Mother's parental rights on the mental illness and nine months' time-in-care grounds. *See* A.R.S. § 8-533(B)(3), (8)(a). Mother purports to challenge these grounds by her citation to *Sandra R. See* 248 Ariz. 224. We need not address her arguments

because the juvenile court did not err by terminating on the physical abuse ground.

## B. The Juvenile Court Did Not Abuse Its Discretion by Not Establishing a Guardianship.

¶17 Mother argues that the juvenile court "abused its discretion in failing to establish a guardianship for [Delaney] and [Austin]" rather than terminating her parental rights, claiming that each of the guardianship elements had been satisfied. *See* A.R.S. § 8-871(A). She asserts that the Department's withdrawn motion to establish the grandparents as permanent guardians "establishes each of these factors." And Mother claims she "requested a guardianship in lieu of severance" at the termination hearing.

¶18 Although Mother testified that she thought guardianship might be an "appropriate case plan" and that the children's needs "can be met through a guardianship," she did not petition for guardianship. *See* A.R.S. § 8-872 (procedure to move for permanent guardianship); *see also* Ariz. R.P. Juv. Ct. 344 (procedure for permanent guardianship proceedings). Nor did she appeal the order affirming the dependency and setting the case plan to severance and adoption. *See Lindsey M. v. Ariz. Dep't of Econ. Sec.*, 212 Ariz. 43, 45, ¶ 7 (App. 2006) (citation omitted) ("[O]rders reaffirming findings that children are dependent" are appealable.). The only motion about guardianship had been withdrawn months before the severance trial and was no longer at issue. Thus, the court did not err by failing to establish a permanent guardianship when no such petition existed. *See Ariz. Dep't of Econ. Sec. v. Stanford*, 234 Ariz. 477, 479-80, ¶¶ 9-13 (App. 2014) (The juvenile court may not *sua sponte* move for permanent guardianship.).

## CONCLUSION

¶19 We affirm.

