NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

IN RE TERMINATION OF PARENTAL  RIGHTS AS TO H.H. and R.H.

No. 1 CA-JV 25-0118
FILED 01-26-2026

Appeal from the Superior Court in Maricopa County
No. JD42811
The Honorable Peter A. Thompson, Judge

**AFFIRMED**

COUNSEL

Maricopa County Office of the Public Advocate, Mesa
By Seth Draper
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Amber E. Pershon, Rachael Andrews
*Counsel for Appellee DCS*

Maricopa County Office of the Legal Advocate, Phoenix
By Amanda Adams
*Counsel for Appellee Children*

**MEMORANDUM DECISION**

Chief Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge David B. Gass and Judge Anni Hill Foster joined.

**H O W E**, Judge:

¶1        Johnathon W. ("Father") appeals the termination of his parental rights as to H.H. and R.H. For the following reasons, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        Father and Cheyenne H. ("Mother") share several children, two of them are relevant to this appeal: H.H. born in May 2022, and R.H., born in December 2022.[1] Both H.H. and R.H. tested positive for substances shortly after their births. R.H. was born prematurely with special needs requiring several months of hospitalization. Following R.H.'s birth, DCS took custody of the two children and soon petitioned for dependency, alleging neglect. The superior court found both children dependent.

¶3        During the dependency, DCS provided Father with various services. He engaged in counseling, and completed some drug testing, but missed other tests and consistently tested positive for marijuana despite knowing that his marijuana use concerned DCS. He also tested positive for methamphetamines and failed to complete substance use treatment. Father did attend some visits with the children, although he missed some and others were cut short. R.H. has cerebral palsy, which requires many medical appointments. Father was repeatedly asked to attend these appointments but only attended one throughout the dependency.

¶4        Over a year-and-a-half after petitioning for dependency, DCS sought termination of Mother's and Father's parental rights. At the termination hearing, Father conceded that he had pled guilty for abusing one of his older children. He also testified that he had been in 176 car accidents since 2015. Father further testified that he smoked marijuana with Mother during her pregnancy. He acknowledged his substance use and missed drug tests during the dependency. He conceded that DCS provided

---

[1] Father has numerous other children, including one more with Mother. His parental rights of those children are not part of this appeal.

him referrals to substance abuse treatment and that he did intake appointments but did not engage further in services.

¶5        A psychologist who evaluated Father testified that he boasted about his past violent actions and made "several explicit statements" that raised serious concerns "about what appeared to be almost an infatuation with violence." He found Father's "inability to be remorseful" "particularly noteworthy" and explained that "[h]e expressed no remorse or regrets about his actions [] or about the serious injuries that he inflicted [] on people he attacked." The psychologist ultimately diagnosed Father with an "unspecified personality disorder with antisocial traits," stimulant use disorder, and cannabis use disorder, concluding that he "does not have the ability to parent his children." In his testimony, Father acknowledged that he had PTSD, bipolar disorder, and a diagnosis of an "unknown" personality disorder, but that he was not taking any medications for those conditions.

¶6        A DCS case manager testified that Father and Mother were not adequately prepared to handle R.H.'s special medical needs. She explained that DCS had provided Father services, including a psychological evaluation, substance use treatment, counseling, drug testing, parenting courses, visitation opportunities, financial support, and transportation to those services when necessary. She elaborated that Father either did not participate in these services at all or participated only sporadically. The case manager also testified that Father had been "erratic," "bizarre" and "vaguely threatening" toward her. She concluded that she "continue[d] to have concerns with Father's ability to parent" and believed that severance and adoption was in the children's best interests.

¶7        At the time of the termination hearing, H.H. and R.H. had been with their foster placement for over two years. The case manager highlighted that permanency is important for young children and explained that the foster placement was open to adoption, exceeded the children's needs, and had bonded with them. Finally, she testified that if the children "were returned to their—either parent's care, they would absolutely be at risk for physical harm, medical neglect, and exposure to violence and unstable living conditions."

¶8        Following the hearing, the court found that "Father's testimony was not credible, conflicted with established facts, and generally reflected Father's inability to appreciate the physical, emotional, medical and financial needs of his children." The court also noted Father's failure to consistently participate in services, his continued drug use, his failure to

"remedy the substance abuse issues that existed at the finding of dependency," and his mental health struggles. The court highlighted that the children had bonded to their foster family and that termination would allow them to be adopted into a supportive and stable environment with each other. The superior court terminated Father's parental rights to both H.H. and R.H. finding that (1) the children had been in an out-of-home placement for over 15 months, (2) DCS had provided sufficient services, (3) Father had failed to remedy the circumstances that led to the out-of-home placement, (4) he was unlikely to be capable of exercising proper and effective parental care and control in the near future, and (5) termination was in the children's best interests. *See* A.R.S. § 8-533(B)(8)(c).

**¶9**        Father appealed and we have jurisdiction. A.R.S. §§ 8-235(A), 12-120.21(A)(1).

## DISCUSSION

**¶10**        As a preliminary matter, we note that Father's brief fails to comply with Arizona Rule of Civil Appellate Procedure ("Rule") 13. *See* Ariz. R. Civ. App. P. 13. Father fails to provide adequate headings, lacks any "statement of the case," "statement of facts," "statement of issues" or similar structure, and generally fails to cite to the record throughout his argument. *See* Ariz. R. Civ. App. P. 13(a)(4)–(7). This Court may dismiss an appeal when the appellant fails to meet the requirements of the Rules. *Adams v. Valley Nat'l Bank of Ariz.*, 139 Ariz. 340, 342–43 (App. 1984). However, in our discretion, and because the best interests of children are at issue, we consider Father's appeal. *See Nold v. Nold*, 232 Ariz. 270, 273 ¶ 10 (App. 2013) ("[I]f the best interests of the child trump the consequences ordinarily imposed for violations of the rules, then they should not be ignored under the discretionary doctrine of waiver.").

**¶11**        We will "affirm a termination order unless the [] court abuses its discretion or the court's findings are not supported by reasonable evidence." *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478 ¶ 29 (2023) (cleaned up). To terminate parental rights, the juvenile court must find by clear and convincing evidence the existence of at least one statutory ground under A.R.S. § 8-533 and by a preponderance of the evidence that termination would be in the child's best interests. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149–50 ¶ 8 (2018). We accept the court's factual findings so long as reasonable evidence and inferences support them, and we affirm the court's legal conclusions about the statutory grounds for the termination unless they are clearly erroneous. *Brionna J.*, 255 Ariz. at 478–79 ¶¶ 30–31. The superior court is in the best position to weigh the

evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts. *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334 ¶ 4 (App. 2004).

**¶12**        Father argues that (1) the superior court improperly relied on an unproven criminal charge in severing his parental rights, (2) DCS "failed to offer or implement any meaningful services aimed at reunification," (3) the court should have considered less restrictive alternatives to termination such as guardianship, and (4) severing his relationship with H.H. and R.H. is not in the children's best interests.

**¶13**        First, although Father claims that the "decision to sever [his] parental rights was based in part on a criminal charge that did not result in a conviction or sentencing," he does not clarify which specific criminal charge he is alluding to. Crucially, the court's termination order *does not* rely on the evidence related to Father's criminal history. Regardless, the court heard evidence, including Father's own testimony, that he was convicted of abusing one of his children. And a psychologist testified to Father's general violent propensities relevant to his diagnoses. Although Father did not object to the psychologist's testimony, during his own testimony, he explained that he disagreed with the psychologist's conclusions. *See Volk v. Brame*, 235 Ariz. 462, 466 ¶ 14 (App. 2014) ("[D]ue process requires the court to allow parties a reasonable opportunity to present testimony whenever resolution of a material contested issue hinges on credibility."). The superior court is in the best position to weigh the evidence and the credibility of witnesses. *Oscar O.*, 209 Ariz. at 334 ¶ 4. Here, it did not err in considering all the evidence presented, and in drawing reasonable inferences to support its factual conclusions. *See Brionna J.*, 255 Ariz. at 478–79 ¶¶ 30–31.

**¶14**        Father also claims that DCS "failed to offer or implement any meaningful services aimed at reunification." But the evidence supports the court's conclusion that DCS made sufficient efforts to provide Father services. DCS offered psychological support, substance use treatment, counseling, drug testing, parenting courses, visitation opportunities, financial support, and transportation to services when necessary. The court did not err in finding that DCS "made diligent efforts by providing an array of reunification services." *See* A.R.S. § 8-533(B)(8).

**¶15**        Father further argues that the court should have sought a less restrictive alternative to termination, such as guardianship. However, Father did not request a guardianship from the superior court, and nothing requires the court to sua sponte establish a guardianship before or instead

of termination. True, the state shall not limit a parent's fundamental rights unless a compelling governmental interest as applied is "narrowly tailored and is not otherwise served by a less restrictive means." A.R.S. § 1-601(B). But the court lacks authority to initiate a guardianship "in the absence of a statutorily compliant motion by a party." *Ariz. Dep't of Econ. Sec. v. Stanford*, 234 Ariz. 477, 480 ¶ 14 (App. 2014). No such motion appears in the record. Thus, not sua sponte ordering a guardianship was proper.

¶16 Finally, Father claims that termination is not in H.H. and R.H.'s best interests. "[T]ermination is in the child[ren]'s best interests if either: (1) the child[ren] will benefit from severance; or (2) the child[ren] will be harmed if severance is denied." *Alma S.*, 245 Ariz. at 150 ¶ 13. Unless the evidence is insufficient to support the juvenile court's finding, we will affirm its best interests ruling. *Id.* at 151 ¶ 17.

¶17 The psychologist and case manager testified that Father was violent and aggressive and could not meet his children's needs in ways that could harm them. Father's own testimony revealed an unwillingness to remedy his substance use and mental health struggles, and a failure to support R.H.'s medical difficulties. And the court heard testimony that the children were in an adoptive, supportive placement where they had bonded with their foster family and could remain together as siblings. Thus, sufficient evidence supports both that the children would be harmed by a continuing relationship with Father and that the children would benefit from severance. The court did not err in finding termination was in the children's best interests. *See id.* at 150 ¶ 13.

## CONCLUSION

¶18 For the reasons stated, we affirm.

