NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO E.V., A.P., and
M.P.

No. 1 CA-JV 25-0122

FILED 02-04-2026

---

Appeal from the Superior Court in Maricopa County
No. JD23891
The Honorable Jay R. Adleman, Judge

**AFFIRMED**

---

COUNSEL

David W. Bell, Higley
*Appellant Stephanie P.*

Maricopa County Office of the Legal Advocate, Phoenix
By Amanda L. Adams
*Counsel for Appellee*

Arizona Attorney General's Office, Phoenix
By Veronica F. Rios
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge Andrew M. Jacobs and Judge Brian Y. Furuya joined.

---

**M O R S E**, Judge:

¶1　　　　Stephanie P. ("Mother") appeals from the court's ruling terminating her parental rights as to E.V., A.P., and M.P. (the "Children"). We affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2　　　　Mother is the biological mother of six children. Her three youngest children, E.V., A.P., and M.P., are subject to this appeal.[1]

¶3　　　　Mother has an extended history with the Arizona Department of Child Safety ("DCS"). DCS has filed five dependency actions against Mother, alleging, among other things, alcohol abuse and domestic violence.[2]

¶4　　　　In 2016, DCS filed a dependency petition alleging Mother exposed her oldest child and E.V. to domestic violence and chronic substance abuse. The court found both children dependent but later dismissed the petition and returned E.V. to Mother's care.[3] In 2018, DCS petitioned for dependency as to E.V. and A.P. based on similar allegations, and the court found both children dependent. In 2020, the court dismissed that petition and returned E.V. and A.P. to Mother's care.

¶5　　　　On June 26, 2023, DCS filed this dependency petition as to the Children. DCS alleged Mother was unable to parent the Children due to her history of chronic alcohol abuse, neglect, and domestic violence involving M.P.'s father ("Father"). In November 2023, the court deemed the Children dependent and removed them from Mother's care. The Children lived with E.V.'s and A.P.'s paternal grandmother ("Grandmother") from

---

[1]　　　The Children's fathers are not parties to this appeal.

[2]　　　In 2013, the court terminated Mother's parental rights as to two other children. Mother did not challenge those terminations.

[3]　　　In April 2018, Mother's oldest child aged out of DCS care.

September 2023 until November 2024, when they returned to Mother's care. During this time, Mother's relationship with Father resulted in various domestic-violence reports. Mother also consumed alcohol, at times, in front of the Children.

¶6 In May 2024, Father was arrested for an altercation with Mother while he was intoxicated. Father was sentenced to two years of supervised probation and ordered not to have contact with any victims, including Mother. In July 2024, Father violated his probation by engaging in a physical altercation with Mother and was sentenced to six months in jail.

¶7 In March of 2025, the Children's attorney moved for change in custody, citing E.V.'s and A.P.'s fear of Mother, physical and emotional abuse by Mother, and Mother's history of alcohol abuse and domestic violence. After a contested hearing, the court denied the motion.

¶8 In April 2025, DCS filed its own motion for change in custody after M.P. reported that Mother hit her in the face with a shoe leaving a mark and then concealed the mark with makeup. The Children reported that Mother drank alcohol the night before Mother hit M.P. E.V. reported that Mother instructed them to say "'good' things about her to DCS, and to tell DCS she is not drinking." In late May 2025, the court placed the Children with Grandmother, and DCS filed a motion to terminate Mother's parental rights as to the Children, alleging substance abuse and fifteen-months out-of-home placement. In August 2025, the court held a hearing and terminated Mother's parental rights on grounds of both (1) chronic substance abuse under A.R.S. § 8-533(B)(3), and (2) fifteen-months out-of-home placement under A.R.S. § 8-533(B)(8)(c).

¶9 Mother timely appealed and we have jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

### I. Fifteen-Months Out-of-Home Placement.

¶10 Mother argues the court erred in terminating her parental rights on both grounds. She asserts the court's concerns regarding her substance abuse were too speculative to form a sufficient basis for termination. She also argues she remedied the circumstances that caused the Children to be in out-of-home placement by ending her relationship with Father and completing her substance-abuse treatment.

¶11 Parents have a fundamental right to the custody and control of their children, but that right is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248–49, ¶¶ 11–12 (2000). To terminate parental rights, the court must find at least one statutory ground set out in A.R.S. § 8-533(B) by clear and convincing evidence and must find that termination is in the child's best interests by a preponderance of the evidence. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149–50, ¶ 8 (2018). We review the court's termination order for an abuse of discretion. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). We will affirm the court's factual findings if they are supported by reasonable evidence and inferences. *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478, ¶ 30 (2023). We defer to the court's factual findings because it is in the best position to weigh evidence and assess the credibility of witnesses. *Id*. We will also affirm the court's legal conclusions about the statutory grounds for termination unless they are clearly erroneous. *Id*. at 478–79, ¶ 30–31.

¶12 Termination of parental rights based on time in out-of-home placement requires DCS to prove: (1) the child was in out-of-home placement for at least fifteen months; (2) DCS made diligent efforts to provide appropriate reunification services; (3) the parent is unable to remedy the circumstances causing the placement; and (4) a substantial likelihood that the parent will remain incapable of providing proper and effective parental control in the near future. A.R.S. § 8-533(B)(8)(c); *see also Roberto F. v. Ariz. Dep't of Econ. Sec*., 232 Ariz. 45, 56, ¶ 51 (App. 2013).

¶13 Mother does not dispute that the Children had been in out-of-home placement for the requisite time or that DCS offered adequate reunification services. Mother only argues the court erred in its determination that she was—and would likely remain unable—to provide proper parental care and control. In support, Mother points to her employment, appropriate housing, completed substance-abuse treatment, less frequent and less excessive consumption of alcohol, and ending her relationship with Father in "early 2024." Mother recognizes that E.V. and A.P. do not want reunification and she "does not want to disrupt that current situation," i.e., living with Grandmother. However, she asserts that M.P. is "differently situated" and should be returned to Mother's care "immediately."

¶14 In its ruling, the court concluded that although Mother had completed the required treatment programs and been compliant with requisite classes and counseling, she had "entirely failed to remediate the domestic violence-related behaviors that created the need for the out-of-home placement."

¶15        Mother completed her substance-abuse treatment program through Terros.  Mother also attended and completed various classes and counseling, including some with a domestic-violence and anger-management component.  At trial, Mother acknowledged she had issues with alcohol in the past but claimed that she had not consumed any alcohol since December 2024.  However, Mother missed many scheduled tests for alcohol, and her testimony "demonstrated that she was a poor historian in terms of her use of alcohol, sobriety, etc." and "was not particularly reliable." The court was not required to credit her claims.  *See In re D.R.*, No. 1 CA-JV 23-0051, 2024 WL 340393, at *3, ¶ 16 n.1 (Ariz. App. Jan. 30, 2024) (mem. decision) (collecting cases regarding the permissible negative inference from inconsistent participation in substance-abuse testing).

¶16        Mother also testified that she was not in a relationship with Father.  But the court found this testimony "highly suspect" and "highly dubious" in light of several incidents involving Mother and Father.  The court ultimately found that Mother's relationship with Father "was occurring (1) in spite of the no-contact orders in the criminal case; and (2) despite their repeated claims that they were no longer engaging in a relationship with one another."  The court concluded Mother had continued to engage in a relationship marked by domestic violence despite its effect on her ability to provide a safe environment for the Children.  It reasoned that the relationship meant there was a substantial likelihood Mother would not be capable of exercising proper care and control of the Children in the future.

¶17        The record contains reasonable evidence to support the court's conclusion about Mother's relationship with Father.  At different times during the proceedings, the Children lived with Mother, Father, and a responsible adult.  Between June 30, 2023, and August 13, 2023 — during the most recent dependency proceedings — the police were called 14 times related to domestic disputes between Mother and Father.  These disputes were often accompanied by threats and injuries to both Mother and Father. Some of the incidents involved alcohol and were in the presence of the Children.  Ultimately, this led DCS to remove the Children from Mother's control and place them with Grandmother.

¶18        As recently as April 2025, Mother had an altercation with Father at a hotel where he was with an unidentified female.  Mother testified that she unintentionally ended up at the hotel room after a tracker on her phone led her there. The court found this explanation "entirely unbelievable."  Mother and Father engaged in a brief argument.  Mother then sent photos of the room and her leg to the Adult Probation Department

accusing Father of kicking her, pulling her hair, and leaving an angry voicemail on her phone. After this incident, Father was jailed, but Mother helped bail him out. In June of 2025, E.V. and A.P. reported seeing Father briefly at A.P.'s birthday and said that Mother had gotten drunk.

**¶19** On this record, the court did not abuse its discretion in finding Mother failed to remedy the circumstances causing out-of-home placement and that there was a substantial likelihood she would remain incapable of proper and effective parental control in the near future. *See Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) ("We do not reweigh the evidence."); *see also Alma S.* 245 Ariz. at 151, ¶ 18 ("The resolution of conflicting evidence is uniquely the province of the juvenile court, and this rule applies even when sharply disputed facts exist." (cleaned up)).

**¶20** Because we affirm the court's findings on the fifteen-months out-of-home placement ground, we need not address the court's findings on the substance-abuse ground. *See Michael J.*, 196 Ariz. at 251, ¶ 27.

## II. Best Interests.

**¶21** Mother argues the court erred in its best-interests assessment because it failed to consider making Grandmother M.P.'s permanent guardian. Mother argues that, although she never requested a guardianship, the court was required to consider this option, asserting the court's "one size fits all approach" ignored the different needs of M.P. compared to E.V. and A.P.

**¶22** Although Mother did not consent to the termination of parental rights as to E.V. and A.P., she testified that she supported their placement with Grandmother. However, she requested additional time to demonstrate compliance with DCS regarding M.P. Mother never moved for a guardianship as is required under A.R.S. § 8-872. Without a motion before it, the court lacked authority to initiate a guardianship. *See Ariz. Dep't of Econ. Sec. v. Stanford*, 234 Ariz. 477, 480, ¶ 14 (App. 2014) (finding that a court erred in proceeding with guardianship proceedings in the absence of a motion complying with A.R.S. § 8-872).

**¶23** Even if we overlook Mother's failure to request a guardianship, *see In re G.I.*, 259 Ariz. 463, 466, ¶ 13 (App. 2025) (declining to apply waiver for issues involving a child's best interests), Mother fails to demonstrate any error. Mother cites *Timothy B. v. Dep't of Child Safety*, 252 Ariz. 470, 476–77, ¶¶ 24, 27 (2022) in support of her contention that the court

is required to consider a potential guardianship when determining a child's best interests. But our supreme court in *Timothy B.* held the court must consider whether a permanent guardianship can provide a "normal home" for the purposes of A.R.S. § 8-533(B)(4). *Timothy B.*, 252 Ariz. at 477, ¶ 28. *Timothy B.* does not require a court to *sua sponte* consider guardianship when determining a termination under A.R.S. § 8-533(B)(8)(c) and Mother points to no other support for this contention.

**¶24** Termination is in the child's best interests if the child will (1) benefit from termination or (2) be harmed absent termination. *Alma S.*, 245 Ariz. at 150, ¶ 13. When performing a best-interests analysis, courts "presume that the interests of the parent and child diverge because the court already found the existence of one of the statutory grounds for termination by clear and convincing evidence." *Id.* at ¶ 12 (quoting *Kent K. v. Bobby M.*, 210 Ariz. 279, 286, ¶ 35 (2005)). The court must balance the parent's diluted interest in maintaining her parental rights against the child's interest in stability and security. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 15 (2016).

**¶25** The DCS case manager testified that making Grandmother M.P.'s permanent guardian was not in M.P.'s best interests because it would delay permanency and risk splitting the Children's case plans apart. The court found although M.P. loved Mother, she was bonded with E.V., A.P., and Grandmother and had been in placement with Grandmother for almost half her life. The court also found that, considering the totality of the circumstances, there was no basis to keep M.P. — a three-year-old child — in the uncertainty of DCS custody while allowing E.V. and A.P. to obtain permanency through adoption. Reasonable evidence supports the court's best-interests conclusion.

## CONCLUSION

**¶26** We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR