NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO A.P. and M.P.

No. 1 CA-JV 24-0079
FILED 02-04-2025

Appeal from the Superior Court in Maricopa County
No. JS21879
The Honorable Pamela S. Gates, Judge
The Honorable Lori Bustamante, Judge

**AFFIRMED**

COUNSEL

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Laura J. Huff
*Counsel for Appellee*

**MEMORANDUM DECISION**

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge Anni Hill Foster joined.

**P A T O N**, Judge:

**¶1**        Cory P. ("Father") appeals the termination of his parental rights to A.P. and M.P.  For the following reasons, we affirm.[1]

## FACTS AND PROCEDURAL HISTORY

**¶2**        We view the facts in the light most favorable to upholding the superior court's termination order.  *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 250, ¶ 20 (2000).  Father and Kelsey D. ("Mother") have two children together, M.P., born in 2017, and A.P., born in 2020—both of whom were born substance-exposed.  Mother is not a party to this appeal.

**¶3**        In October 2020, the Department of Child Safety ("DCS") received a report that Mother and A.P. tested positive for amphetamines. DCS removed the children from Mother and Father's care due to substance abuse and domestic violence concerns and opened a dependency in November 2020.

**¶4**        During the dependency proceeding, DCS provided Father with services including substance abuse treatment, drug testing, counseling, parent aide, and visitation.  Father did not consistently attend testing appointments and tested positive for amphetamines and methamphetamines in November 2020 and April 2022, and he stopped testing in August 2022.  Father did not successfully complete drug treatment or demonstrate sobriety.

**¶5**        In February 2023, the court dismissed the dependency action and DCS returned the children to Mother's care.  Mother was granted sole custody of the children, and the court permitted Father supervised visitation.  But Father would visit with the children unsupervised and, according to M.P., left the children unattended in the home with unknown individuals.

**¶6**        In January 2024, DCS removed the children from Mother's care and placed the children with their maternal grandmother.  That same month, DCS filed another dependency petition against Mother and Father. Father pled no contest to the allegations and the court adjudicated the children dependent as to him.

---

[1] The issuance of this decision has been delayed because of disclosure issues at the superior court.  On September 18, 2024, the Department of Child Safety moved to stay this appeal because of those disclosure issues.  On January 16, 2025, the Department moved to lift the stay because the disclosure issues in this case had been resolved, which this court granted.

¶7            In February 2024, DCS petitioned to terminate Mother and Father's parental rights to A.P. and M.P., alleging neglect, abuse, and substance abuse grounds against Father.   DCS later amended the termination petition to remove the abuse allegation against Father and to remove Mother because her case plan changed to guardianship.

¶8            DCS offered Father outpatient substance abuse treatment, drug testing, and clinical supervised visitation.  Father tested positive for amphetamines and methamphetamines three times in February and March 2024.  He attended a few substance abuse treatment sessions in March 2024, but stopped attending altogether in April 2024.

¶9            In April 2024, the superior court held a termination hearing. When asked whether offering Father a guardianship would be detrimental to the children, a DCS case manager testified that Father was still actively using illegal drugs, had not made the necessary behavioral changes since the prior dependency, and had not demonstrated an ability to appropriately care for the children.  The case manager also testified that DCS offered Mother a guardianship case plan because she made behavioral changes, including not actively using drugs.

¶10            During Father's testimony, he admitted he struggled to maintain his sobriety and relapsed in 2021.  He also admitted to using methamphetamines in February, March, and April of 2024, and that he did not complete substance abuse treatment.

¶11            The superior court terminated Father's parental rights on the substance abuse ground but found DCS had not proven neglect by clear and convincing evidence.  The court found DCS proved by a preponderance of the evidence that continuing Father's relationship with the children would be detrimental to the children and that the "[c]urrent placement is meeting the needs of the children and is the least restrictive placement consistent with the best interest of the children."

¶12            Father timely appealed.  We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") Sections 8-235(A) and 12-2101(A)(1).

## DISCUSSION

I.     **The superior court was not required to order DCS to offer Father the less restrictive guardianship placement.**

¶13            Father argues the superior court erred by not requiring DCS to offer him the least restrictive means, such as a guardianship placement,

and thus the termination order violated his fundamental right to parent. In support of his argument, he cites Section 1-601, which provides that a governmental entity "shall not infringe on" a parent's "fundamental right" to oversee their children's upbringing without providing a "compelling governmental interest" that cannot "otherwise [be] served by a less restrictive means." A.R.S. § 1-601(A), (B). DCS contends Father waived this argument by failing to raise it in the superior court, and even if he had, the court could not establish a permanent guardianship under these circumstances.

¶14 Although Father's counsel asked the DCS case manager why only Mother's case plan was changed to guardianship, Father did not argue that the court should have required DCS to consider guardianship as a less restrictive alternative, as he now contends. Nor did he move to change the case plan to guardianship. *See Ariz. Dep't of Econ. Sec. v. Stanford*, 234 Ariz. 477, 480, ¶ 13 (App. 2014) (the court has no jurisdiction to proceed with a guardianship when no motion was filed). Father has therefore waived this argument by failing to present it in the superior court. *See Kimu P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 39, 44, ¶ 19 n.3 (App. 2008) (arguments not raised in the superior court are waived on appeal).

¶15 Even if Father properly raised the argument, he ignores the language in Section 1-602(B), which provides that "[t]his section does not prohibit a court from issuing an order that is otherwise allowed by law." In other words, Sections 1-601 and 1-602 do not restrict the court's authority to terminate parental rights when it finds the elements of Section 8-533(B) proven. Under these circumstances, the court did not have to require DCS to pursue a guardianship and thus did not err.

## II. Reasonable evidence supports the superior court's finding that termination was in the children's best interests.

¶16 Father does not challenge the sufficiency of evidence supporting termination on the substance abuse ground, but he does challenge the court's finding that termination was in the children's best interests. He does not dispute the court's factual findings but instead contends the court did not give "sufficient weight to the fact that Father could remain a parent under a guardianship and continue with his reunification efforts."

¶17 Termination is in the children's best interests if the children will benefit from termination or if they will be harmed if termination is denied. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150, ¶ 13 (2018).

Although the children are the primary focus of this inquiry, a court should also consider a parent's rehabilitation efforts. *Id.* at 151, ¶ 15. We will affirm the superior court's best interests findings if supported by reasonable evidence. *Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 93, ¶ 4 (App. 2009).

**¶18**        Here, the superior court found that Father's continued relationship with the children would be detrimental to them because Father will continue to attempt "actively parenting and caring for his children while continuing to use dangerous drugs[]" and "does not understand or acknowledge the risks of parenting the children when actively using illegal substances."

**¶19**        Father had over three years to demonstrate sobriety—which he knew was required to have his children returned to his care—but failed to do so. *See Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 288, ¶ 25 (App. 2016) (concluding the children's "interest in permanency should prevail over [a parent's] uncertain battle with drugs"); *see also Maricopa Cnty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994) (Noting DCS is not required to leave the remediation window open indefinitely). Since the prior dependency proceeding began in November 2020, Father made no meaningful steps towards sobriety. He attended only a few substance abuse treatment sessions and tested positive for drugs multiple times in the months before the termination hearing. He testified that he used drugs just weeks before the termination hearing. And although Father denied using substances around the children, the court found his testimony lacked credibility. *See Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3, ¶ 9 (2016) (The superior court "is in the best position to weigh evidence and assess witness credibility.").

**¶20**        The court expressly "considered the totality of the circumstances" before terminating Father's parental rights and found that "the probability of reunification . . . is remote" and would cause the children to "linger in the custody of the Department for an extended time while [Father] begins his journey toward sobriety." Father asks us to reweigh the evidence which we will not do on appeal. *See Steven M. v. Dep't of Child Safety*, 254 Ariz. 426, 431, ¶ 17 (App. 2023).

**¶21**        The court also found that the children's current placement with maternal grandmother was meeting the children's needs. *See id.* at 430-31, ¶¶ 15-17 (superior court should consider whether the current placement meets the child's needs and whether continuing the relationship would harm the child in the court's best-interest determination).

Reasonable evidence supports the superior court's finding that termination was in A.P. and M.P.'s best interests.

**CONCLUSION**

¶22        We affirm.

